IN THE MATTER OF THE GUARDIANSHIP OF
C. M. A/K/A C. Y.

Juvenile and Domestic Relations Court
Passaic County

April 7, 1978.

586

*Mr. Robert Gray* for plaintiff Division of Youth and Family Services (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Ms. Madeline L. Houston* of the Passaic County Legal Services, for defendant H. M.

SAUNDERS, J. C. C. (temporarily assigned). ▮ It is well settled law that for the State to temporarily or permanently deprive indigent parents of their children under statutes concerned with dependent and neglected children, without pro-

viding counsel, constitutes a fundamental deprivation of procedural due process. *Crist v. N. J. Div. Youth and Family Serv.*, 128 *N. J. Super.* 402 (Law Div. 1974), aff'd in part, rev'd in part on other grounds, 135 *N. J. Super.* 573 (App. Div. 1975).

The novel question before this court is whether the State, having initiated an action for protective services and guardianship under *N. J. S. A.* 30:4C-1 *et seq.* and the parent being represented by counsel, can negotiate directly with the parent to obtain a voluntary "Surrender of Custody and Consent for Adoption" under *N. J. S. A.* 9:2-16 or *N. J. S. A.* 30:4C-23 so as to terminate all parental rights.

A review of the procedural and factual background is necessary to fully understand the problem.

C.M. was born on May 28, 1964 to H.M., who was then unmarried. The child was referred to the Division of Youth and Family Services (DYFS) in 1966 because of a possible neglect situation, and the family has been under protective services supervision since that time. Since January 1, 1975 the child has been staying with his aunt, apparently with the informal consent of H.M.

When H.M. refused to sign a foster care agreement for C.M., DYFS filed a petition requesting that the child be placed in its care and supervision, including authorization to assume physical custody. Thereafter, the Passaic County Legal Air Society (Legal Aid) represented H.M. and consent orders were entered on April 18, 1975 and May 6, 1975 placing C.M. in the temporary care of DYFS, with the child to remain in the physical custody of the aunt pending final determination.

On January 27, 1976 an order to show cause with a new complaint was filed by DYFS requesting termination of parental rights and guardianship of C.M. to DYFS pursuant to *N. J. S. A.* 30:4C-15 (Dependent and Neglected Children).

A copy of the pleadings was personally served on H. M. on February 19, 1976[1], at which time the DYFS caseworker discussed with H.M. the possibility of her voluntarily signing a Surrender of Custody and Consent for Adoption form, which was refused. Five days later, on February 24, the caseworker was called by E.B. (a male companion residing with H.M.). As a result, he went to the home of H.M. where he was told by her that she desired to sign the necessary papers for adoption since she thought it best for the child to be adopted. H.M. was asked by the caseworker if she wanted to speak to her attorney and H.M. indicated that she did not. H.M. and E.B. were then transported by the caseworker to the DYFS office where H.M. signed a Surrender of Custody and Consent for Adoption form with an "X" as her signature. H.M. is blind. The documents were read aloud to both E.B. and H.M. in the presence of the caseworker, two assistant supervisors and a notary public who witnessed the signature. The entire process took about an hour.

Legal Aid learned from the Deputy Attorney General representing DYFS that DYFS was in possession of a fully executed "surrender." After speaking to H.M., Legal Aid advised DYFS that H.M. objected to the legality of the procedure since she was not represented and she did not understand the effect of the document.

New Jersey has enacted a comprehensive scheme governing the surrender of custody of children to agencies and the termination of parental rights:

---

[1] The State served a copy of these pleadings on Legal Aid, thereby acknowledging its representation of H. M. Legal Aid requested that it be permitted to withdraw as counsel for H. M. since she was now entitled to have an attorney appointed for her pursuant to *Crist*, *supra*.

The then Legal Aid attorney, anticipating a change of attorneys, informed the DYFS caseworker that he should not present H. M. with any papers during the interim without an attorney present. This was not denied by DYFS. Legal Aid continued its representation of H. M. thereafter pursuant to court order.

*N. J. S. A.* 9:2–14 provides in pertinent part:

Except as otherwise provided by law or by order or judgment of a court of competent jurisdiction or by testamentary disposition, no surrender of the custody of a child, shall be valid in this State unless made to an approved agency * * *.

*N. J. S. A.* 9:2–16 provides:

An approved agency may take a voluntary surrender of custody of a child from the parent of such child, or from such other person or persons who, by order of a court of competent jurisdiction, have been substituted for the parent as to custody of such child. Each such surrender, when properly acknowledged in the manner and form provided by sections 46:14–6 and 46:14–7 of the Revised Statutes, shall be valid whether or not the person giving the same is a minor and shall be irrevocable except at the discretion of the approved agency taking such surrender or upon order or judgment of a court of competent jurisdiction setting aside such surrender upon proof of fraud, duress or misrepresentation.

Additionally, *N. J. S. A.* 30:4C–23 states:

* * * the Bureau of Childrens' Services, after due investigation and consideration, may, in cases where it would be to the permanant advantage of the child, take voluntary surrenders and releases of custody and consents to adoption from the parent, parents, guardians or other persons or agencies having the right or authority to give such surrenders, releases or consents. Such surrenders, releases or consents, when properly acknowledged before a person authorized to take acknowledgements of proofs in the State of New Jersey, shall be valid and binding irrespective of the age of the person giving the same, and shall be irrevocable except at the discretion of the Bureau of Childrens' Services or upon order of a court of competent jurisdiction.[2]

■ When a natural parent freely, voluntarily and understandingly, with present resolution to abandon parental

---

[2]Both statutes govern the surrendering of a child to an agency and they should be read together to make the giving of a surrender either to the Division or to any other approved agency irrevocable unless there is proof of fraud, duress or misrepresentation.

rights, gives consent to adoption, that consent should be considered irrevocable and binding absent fraud or some overriding equitable consideration. *Sees v. Baber,* 72 *N. J.* 201 (1977); *Sorentino v. Family and Childrens' Soc. of Elizabeth,* 72 *N. J.* 127 (1976); *In re T,* 95 *N. J. Super.* 228 (App. Div. 1967); *In re Adoption By B,* 63 *N. J. Super.* 98 (App. Div. 1968).

The court is satisfied from the evidence that the documents were fully read and explained to H.M., and that she understood them and signed them voluntarily and willingly. The testimony of H.M. does not sustain a showing of any fraud, duress or misrepresentation by DYFS, nor did H.M. call E.B. as a witness to support her position even though he was available.

The question then is whether there is any overriding equitable consideration that negates the integrity of the documents executed by H.M.

■■ The right to custody of one's children and the protection of the integrity of the family from arbitrary governmental action is a fundamental constitutional right. *Stanley v. Illinois,* 405 *U. S.* 645, 92 *S. Ct.* 1208, 31 *L. Ed.* 2d 551 (1972). That constitutional right requires that an indigent person have a right to the appointment of counsel in proceedings "which may result in either temporary loss of custody or permanent termination of their parental rights. Simple justice demands nothing less in light of the magnitude of the consequences involved." *Crist, supra* at 575. The right to the aid of counsel is not a mere formality; it is the essence of justice. *State v. Edge,* 111 *N. J. Super.* 182 (App. Div. 1970), rev'd on other grounds 57 *N. J.* 580 (1971).

If the right to counsel to protect this constitutional right is to be effective, then the right must exist not only at the trial itself but at all critical stages after formal proceedings have begun. See *Brewer v. Williams,* 430 *U. S.* 387, 97 *S. Ct.* 1232, 51 *L. Ed.* 2d 424 (1977); *Powell v. Alabama,* 287 *U. S.* 45, 53 *S. Ct.* 55, 77 *L. Ed.* 158 (1932).

■ There can be no doubt that the filing of the complaint herein is the beginning of a formal proceeding (the original complaint for protective services was still pending). Likewise, there can be no doubt that the signing of a surrender is a "critical stage," a stage at which that constitutional right, which the right to an attorney is intended to protect, *i. e.*, one's rights as a parent, can be irretrievably lost.

Under these circumstances a parent must have the right to be represented by an attorney and even be provided counsel, if necessary. H.M. had counsel, which fact was known to DYFS. Counsel had told DYFS not to present any papers for surrender to H.M. without an attorney present.

■ DYFS urges that H.M. voluntarily waived her right to counsel. The right to counsel may be waived or renounced. *State v. Murphy*, 87 *N. J. L.* 515 (E. & A. 1915) ; *In re Garofone*, 80 *N. J. Super.* 259 (Law Div. 1963), aff'd 42 *N. J.* 244 (1964) ; *State v. Davis*, 88 *N. J. Super.* 528 (Law Div. 1965), rev'd on other grounds 92 *N. J. Super.* 289 (App. Div. 1966).

■ Such a waiver or renouncement of counsel must be made intelligently and understandingly. *State v. Davis*, *supra; Janiec v. State*, 87 *N. J. Super.* 76 (App. Div. 1965) ; *Carnley v. Cochran*, 369 *U. S.* 506, 82 *S. Ct.* 884, 8 *L. Ed.* 2d 70 (1962). A determination whether there has been an intelligent waiver of a constitutional right to counsel must depend in each case upon the particular facts and circumstances, including the party's background, experience and conduct. *Jenkins v. State*, 57 *N. J. Super.* 93 (App. Div. 1959), rev'd on other grounds 32 *N. J.* 109 (1960).

■ ■ The importance of the right to counsel in all phases of a constitutionally protected proceeding requires that an asserted waiver be shown to have been both intelligent and clearly manifest. *In re Application of Palumbo*, 58 *N. J. Super.* 80 (App. Div. 1959). The court must indulge in every reasonable presumption against the waiver of counsel. *State v. Davis; In re Garofone* and *Brewer v. Williams*, all *supra*.

A child's relationship with a parent is of such significance that all doubts are to be resolved against its destruction. *In re N*, 96 *N. J. Super.* 415 (App. Div. 1967); *S.M. v. S.J.*, 143 *N. J. Super.* 379 (Ch. Div. 1976)

The name of an adopted child and his right of inheritance are changed and the biological ties with parents are forever foreclosed. Such an action is of the first magnitude and should be sanctioned only after serious consideration of the consequences.

Where a parent-child relationship is sought to be permanently terminated under circumstances where the right to counsel is a constitutionally protected right, then the waiver of that right must be shown by clear and convincing evidence.

DYFS contends that it took the "surrender" at the request of H.M., and then only after "suggesting" to H.M. that she "may wish" to discuss the matter with her attorney. As pointed out in *Crist, supra* 128 *N. J. Super.* at 415, "The persons most likely to be subjected to a termination of parental rights or custody proceeding are frequently on the lesser end of the scale of intelligence and resourcefulness."

H.M. is blind. Alcohol has been a problem for her. The court observed that she had difficulty when walking and negotiating the steps to the witness stand even with assistance, and her hands were constantly shaking as if in a tremor. From her testimony and demeanor it was obvious that she was not a very intelligent woman.

The court is not satisfied from the facts that the waiver, if any, was an intelligent waiver of a constitutional right, nor was it clearly manifest. The waiver has not been shown by clear and convincing evidence.

The court is compelled to comment on the conduct of the Division of Youth and Family Services in this matter. The DYFS case worker was told by H.M.'s counsel not to present papers to her while there was an application pending for a change of attorney from Legal Aid to the Public Defender. Contrary to this instruction DYFS dealt directly

with H.M. This conduct on the part of a state agency cannot be condoned. Such conduct may itself be a sufficient overriding equitable consideration so as to invalidate the signing of the Surrender and Consent form.

For all the reasons set forth above, the Surrender of Custody and Consent for Adoption signed by H.M. is void and set aside.