937 A.2d 1013 (2008)
397 N.J. Super. 439
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent
v.
R.G., Defendant-Appellant.
In the Matter of R.X.,[1] a minor.
Superior Court of New Jersey, Appellate Division.
Submitted December 19, 2007.
Decided January 8, 2008.
*1014 Yvonne Smith Segars, Public Defender, for appellant (Colleen A. McCarthy, Designated Counsel, of counsel and on the brief).
Anne Milgram, Attorney General, for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Frances McGrogan, Deputy Attorney General, on the brief).
Yvonne Smith Segars, Public Defender, Law Guardian, for minor R.X. (Cynthia McCulloch, Assistant Deputy Public Defender, on the brief).
Before Judges LISA, LIHOTZ and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.S.C. (temporarily assigned).
Defendant is the biological father of R.X. Defendant appeals from the order of September 18, 2006, transferring legal and physical custody of R.X. to his biological mother, S.G., granting him liberal visitation and terminating the litigation. On this appeal, defendant raises the following arguments:
POINT I
THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN THE FACT-FINDING HEARING AND MOTION FOR SUMMARY JUDGMENT WERE CONDUCTED BEFORE THE DEFENDANT WAS REPRESENTED BY COUNSEL AND WITHOUT THE OPPORTUNITY TO PRESENT EVIDENCE.
POINT II
THE TRIAL COURT ERRED IN AWARDING CUSTODY OF [R.X.] TO THE OUT-OF-STATE NON-CUSTODIAL *1015 PARENT AND TERMINATING LITIGATION WITHOUT CONDUCTING A PERMANENCY HEARING.
We do not agree with Point II, and hold that a permanency hearing is not required prior to placing a child in the physical custody of the non-abusive parent and dismissing the litigation. However, we agree with Point I that defendant's procedural due process rights were violated by the failure to appoint counsel to represent him. Because of this defect, we reverse and remand for a new hearing.

I
R.X. was born on July 12, 2002. Defendant and S.G. were married shortly before R.X. was born and separated within a year. After the parties separated, defendant lived in New Jersey and S.G. lived in New York. S.G. brought a custody action in New York. An order was entered awarding joint legal custody to defendant and S.G., with primary physical custody awarded to defendant, and liberal visitation awarded to S.G. Defendant suffers from serious health problems for which he was hospitalized numerous times. S.G. suffers from a mental illness for which she was hospitalized numerous times.
On January 31, 2005, the New Jersey Division of Youth and Family Services (DYFS) received an anonymous referral that defendant slept all day, had numerous people going in and out of his house, and used crack cocaine. During an investigation, defendant explained to a DYFS worker that he slept often because he had a serious heart condition, and his mother or sister cared for R.X. when he was sleeping or at medical appointments. Defendant also denied using crack cocaine. However, on February 22, 2005, defendant submitted to a urine screen, which tested positive for cocaine. Defendant was referred to outpatient substance abuse treatment, but did not attend due to his continuing medical treatment and hospitalizations. Defendant's treating physician advised DYFS that defendant's toxicology reports during four or five hospitalizations between June 2005 and October 2005 tested negative for all substances.
After concluding its investigation, DYFS determined that R.X. was well cared for and was not being abused or neglected; there was support from relatives; defendant was not found to be using drugs; and defendant was unable to submit to another substance abuse evaluation and attend treatment due to his illness. As a result, DYFS closed the case on December 20, 2005.
On April 4, 2006, DYFS received another referral alleging that defendant used crack cocaine; was "high" all the time; R.X.'s paternal aunt was caring for the child; R.X. was absent from school for four days because defendant did not wake up to put her on the school bus; defendant was being investigated by the police for having sexual relations with minors; and defendant slept in the same bed as R.X. DYFS contacted defendant's mother, who advised that she was caring for R.X. because defendant was ill. Defendant's mother also stated she would continue to care for R.X., and would not permit unsupervised contact between the child and defendant.
On April 5, 2006, defendant submitted to a urine screen, which tested positive for cocaine. As a result, on April 24, 2006, DYFS filed an Order to Show Cause and Verified Complaint. The Order to Show Cause advised that:
The defendants shall have the right to be represented by counsel of their own choosing, or if they are unable to afford counsel, then make an application to the Court for appointment of counsel *1016 through the Office of the Public Defender by completion of the attached form[.]
Defendant appeared on April 24, 2006. The trial judge and an attorney from the Public Defender's Office advised defendant that they would have a lawyer appointed to represent him. The record does not reflect that defendant was provided the form to apply for a public defender to represent him, advised of the procedure for doing so, or assigned a public defender during this hearing. The trial judge granted legal and physical custody of R.X. to DYFS, ordered the child removed from the home, and scheduled a return date of May 8, 2006. Throughout the proceedings, R.X. resided with her paternal grandmother, who agreed to continue caring for the child.
Defendant did not appear on May 8, 2006, nor did an attorney appear on his behalf, and the record does not reflect that a public defender was assigned to represent defendant. The deputy attorney general representing DYFS advised the judge that defendant was in the hospital. The judge proceeded with the hearing nonetheless.
Defendant attended substance abuse counseling with a private counselor to accommodate his physical limitations caused by his ill health. He provided a urine sample on July 5, 2006, which was negative. On July 12, 2006, a DYFS caseworker advised defendant he had to submit to another urine screen on July 12, 2006. Defendant advised the caseworker that he could not do so because he was too ill. The judge subsequently determined this to be a refusal to submit to a urine screen.
Defendant appeared at a fact-finding hearing on July 27, 2006, without an attorney. The public defender representing S.G. advised the judge that he was not sure if defendant was represented by the Public Defender's Office. The judge stated to defendant:
THE COURT: Mr. [G], I don't recollect you completing an application for the services of a Public Defender. Did you?
DEFENDANT: No one told me to.
THE COURT: Then you need to fill out that application today and you'll submit it to the Court. Okay? We'll give you one in a minute.
The judge then proceeded with the hearing. During the course of the hearing, the judge had defendant speak with Joseph Preziosi, a public defender who happened to be in the courtroom. The judge asked Mr. Preziosi to determine whether defendant would enter into a stipulation of abuse and neglect. Mr. Preziosi advised the judge:
I spoke with the [defendant] briefly. The complaint is rather detailed. And he would like an opportunity to speak with the actual attorney who's going to be assigned to represent him at this particular juncture. And in light of that, Judge, I, myself feel uncomfortable since I have not actually been assigned to represent him[.]
After defendant refused to enter into the stipulation, DYFS moved for summary judgment against him only. In response, Mr. Preziosi stated:
Judge, every defendant in this area of law has a right to a trial with respect to the issue of abuse and neglect. And although [counsel for DYFS] may be correct in that in her opinion she may feel this is a[sic] open and shut case, then it's not thatit should not be that much of a burden for [counsel for DYFS] to put her proofs on when [defendant] has an attorney to represent him. If [counsel for DYFS] thinks the issues are that clear cut, it should be no more than a simple two-minute trial.

*1017 And I think that this defendant is entitled to be represented by an attorney and have that issue resolved. And the fact that in every stipulation, we always [sic] the client that he's aware that they have a right to a trial and they havewhere the Division would have that burden of proof. And that should not beat this particular juncture, this client should not be deprived of that.
Despite acknowledging that defendant was entitled to an attorney, the judge proceeded with the hearing, and concluded defendant abused and neglected R.X. The judge found that defendant tested positive for cocaine on February 16, 2006, and April 5, 2006. However, defendant had actually tested positive for cocaine on February 16, 2005, which was prior to the time DYFS closed the case in December 2005.
Defendant appeared at the final hearing on September 18, 2006. By that time, Mr. Preziosi had been assigned to represent defendant. Defendant and S.G. had been assessed by a psychologist, who opined that defendant was not prepared to resume parenting responsibilities due to his poor health and failure to address his substance abuse. The psychologist also opined that R.X. should be placed with S.G. "under the condition that [S.G.] engages in weekly psychotherapy to monitor and address the effect of additional parenting stresses." Defendant objected to DYFS's recommendation to transfer custody of R.X. to S.G. and dismiss the matter. Defendant also requested a permanency hearing. The judge denied defendant's request and entered an order transferring custody of R.X. to S.G., granting defendant liberal supervised visitation, and dismissing the matter. The judge did not require S.G. to continue psychotherapy. This appeal followed.

II
We first address defendant's contention the judge erred in failing to hold a permanency hearing. Defendant argues that a permanency hearing is required "even if the plan is placing the child with the non-custodial parent and changing custody," and that temporarily placing the child with a "relative or other suitable person" falls within the ambit of N.J.S.A. 9:6-8.54. In other words, S.G. is a "relative or other suitable person," and by giving her custody of [R.X.], there was a "placement" pursuant to N.J.S.A. 9:6-8.54, requiring a permanency hearing before becoming final. Because S.G. "was not the parent responsible for R.X.'s care at the time the [DYFS complaint] was filed," the order was not in accordance with the applicable Title 9 provisions. We disagree.
N.J.S.A. 9:6-8.50d provides:
d. If the court makes a finding of abuse or neglect, it shall determine, based upon the facts adduced during the fact-finding hearing, and upon any other facts presented to it, whether a preliminary order pursuant to section 11 hereof is required to protect the child's interests pending a final order of disposition. The court shall state the grounds for its determination. In addition, a child found to be abused or neglected may be removed and remanded to a place designated by the court or be placed in the custody of a suitable person, pending a final order of disposition, if the court finds that there is a substantial probability that the final order of disposition will be an order of placement under the section 34 hereof.
N.J.S.A. 9:6-8.54a provides:
For the purpose of [N.J.S.A. 9:6-8.51], the court may place the child in the custody of a relative or other suitable person or the division for the placement of a child after a finding that the division has made reasonable efforts to prevent placement or that reasonable efforts to *1018 prevent placement were not required in accordance with [N.J.S.A. 30:4C-11.2].
N.J.S.A. 9:6-8.54b(2) provides:
The court shall conduct a permanency hearing for the child no later than 30 days after placement in cases in which the court has determined that reasonable efforts to reunify the child with the parent or guardian are not required . . . or no later than 12 months after placement in cases in which the court has determined that efforts to reunify the child with the parent or guardian are required.
We have found no published opinion addressing defendant's contention that placing R.X. with S.G., a non-custodial parent at the time DYFS initiated the litigation, constituted a "placement," or whether a "relative or other suitable person" includes a non-custodial parent for the purposes of a "placement" under N.J.S.A. 9:6-8.54. We hold that a permanency hearing is not required under the circumstances here.
N.J.S.A. 9:6-8(b)(2) requires DYFS to make "reasonable efforts" to preserve and reunify the family. However, DYFS is under no statutory obligation to continue supervision and services indefinitely after determining that the risk to the child's safety has been eliminated and the conditions leading to the child's removal from the physical custody of the abusive parent have been remediated. There also is no statutory bar to dismissing Title 9 litigation after placing physical custody of the child with the non-abusive parent following a period of DYFS supervision aimed at rehabilitating the abusive parent. Once the court has determined that the best interests of the child are served by physical custody with one parent and liberal and unsupervised visitation with the other, nothing in Title 9 prevents termination of protective services litigation, or warrants continued DYFS intrusion in the familial relationship.
The court is required to hold a permanency hearing when a child is placed with a "relative or other suitable person." N.J.S.A. 9:6-8.54(a). However, we do not view the transfer of custody to a non-abusive parent a "placement" under the statute. Accordingly, there is no need for a permanency hearing prior to placing a child in the physical custody of the non-abusive parent and dismissing the litigation.
Here, defendant did not have the right under N.J.S.A. 9:6-8.54 to a permanency hearing because a "placement" never occurred. Physical custody of R.X. was placed with S.G., the non-abusive parent.
Furthermore, the judge was not required to hold a permanency hearing because R.X. was returned to S.G. in less then twelve months after the child's placement in DYFS's custody and care. N.J.S.A. 9:6-8.54b(2). Accordingly, the judge did not err in failing to hold a permanency hearing.

III
Defendant next contends his constitutional right to due process was violated when the July 27, 2006 fact-finding hearing and motion for summary judgment occurred before he was represented by counsel. We agree.
N.J.S.A. 9:6-8.43a provides:
The court shall advise the parent or guardian of his right to have an adjournment to retain counsel and consult with him. The court shall advise the respondent that if he is indigent, he may apply for an attorney through the Office of the Public Defender. In cases where the parent or guardian applies for an attorney through the Office of the Public Defender, the court may adjourn the case for a reasonable period of time for the parent or guardian to secure counsel; however, the adjournment shall not *1019 preclude the court from granting temporary relief as appropriate under the law.
"[T]he due process guarantee of Article I, paragraph 1 of the New Jersey Constitution serves as a bulwark against the loss of parental rights without counsel being afforded." N.J. Div. of Youth and Family Servs. v. B.R., 192 N.J. 301, 305, 929 A.2d 1034 (2007) (citing Pasqua v. Council, 186 N.J. 127, 147, 892 A.2d 663 (2006)). This "constitutional right requires that an indigent person have a right to the appointment of counsel in proceedings `which may result in either temporary loss of custody or permanent termination of their parents rights. Simple justice demands nothing less in light of the magnitude of the consequences involved.'" In re The Guardianship of C.M., 158 N.J.Super. 585, 592, 386 A.2d 913 (Juv. & Dom. Rel. Ct.1978) (quoting Crist v. N.J. Div. of Youth & Family Servs., 135 N.J.Super. 573, 575, 343 A.2d 815 (App.Div.1975)); see also Rodriguez v. Rosenblatt, 58 N.J. 281, 295, 277 A.2d 216 (1971) (counsel is required where a "consequence of magnitude" is at issue).
"It is well settled law that for the State to temporarily or permanently deprive indigent parents of their children under statutes concerned with dependent and neglected children, without providing counsel, constitutes a fundamental deprivation of procedural due process." C.M., supra, 158 N.J.Super. at 587, 386 A.2d 913 (citing Crist v. N.J. Div. of Youth & Family Servs., 128 N.J.Super. 402, 409-10, 320 A.2d 203 (Law Div.1974), aff'd in part, rev'd in part on other grounds, 135 N.J.Super. 573, 343 A.2d 815 (App.Div. 1975)). Furthermore, "[i]f the right to counsel to protect this constitutional right is to be effective, then the right must exist not only at the trial itself but at all critical stages after formal proceedings have begun." C.M., supra, 158 N.J.Super. at 591, 386 A.2d 913.
Our Supreme Court has held that "parents charged with abuse or neglect of their children have a constitutional right to counsel." N.J. Div. of Youth & Family Servs. v. E.B., 137 N.J. 180, 186, 644 A.2d 1093 (1994). "Title 9 acknowledges that right in child-abuse and neglect actions by providing defense counsel through OPD [Office of the Public Defender]." Ibid. "Merely having counsel present, however, does not fulfill the constitutional requirements. Indeed, in the analogous criminal context, `[t]hat a person who happens to be a lawyer is present alongside the accused . . . is not enough to satisfy the constitutional command.'" Ibid. (quoting Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 693 (1984)). Furthermore, "[t]he judge must also directly apprise defendants of their rights under Title 9 to a fact-finding hearing where the burden of proof will be on DYFS to establish the elements of abuse and neglect by a preponderance of the evidence." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J.Super. 245, 266, 800 A.2d 132 (App.Div.2002) (citing N.J.S.A. 9:6-8.46b).
Here, no one disputes that defendant is indigent. He was accused of abusing and neglecting R.X., and faced the temporary or permanent loss of custody of the child. Thus, defendant had a constitutional right to the appointment of counsel to represent him during all of the proceedings held in this case, the most critical of which was the fact-finding hearing and summary judgment motion on July 24, 2006. Defendant had no such representation, and merely having Mr. Preziosi present on July 24, 2006, "is not enough to satisfy the constitutional command." N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J.Super. 322, 346, 918 A.2d 63 (App.Div. 2007). The failure to appoint counsel to represent defendant during the most critical *1020 stages of this litigation constitutes a fundamental deprivation of his procedural due process rights.

IV
Defendant also argues that by entering the September 18, 2006 order without stating that New Jersey retained jurisdiction over the matter, the judge improperly relinquished jurisdiction to the State of New York, where S.G. resides.
Because we have remanded this matter for a new hearing, we need not address this issue. On remand, the judge shall hold a plenary hearing to determine the issue of abuse and neglect and, as necessary, re-visit the custody issue because the change of custody was based upon the finding of abuse and neglect, which we now reverse.
Reversed and remanded for a plenary hearing consistent with this opinion.
NOTES
[1] For purposes of clarity, we will refer to the minor child as R.X. because her initials are the same as that of defendant, R.G.