968 A.2d 698

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–APPELLANT, v. G.M., DEFENDANT–RESPONDENT, AND M.M., DEFENDANT, IN THE MATTER OF THE GUARDIANSHIP OF K.M. AND C.M., MINORS.

Argued January 6, 2009—Decided April 7, 2009.

384

*Andrea M. Silkowitz,* Assistant Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General of New Jersey, attorney).

*T. Gary Mitchell,* Deputy Public Defender, argued the cause for respondent G.M. (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Mitchell* and *Jean M. Hartmann,* Designated Counsel, on the briefs).

*Phyllis G. Warren,* Assistant Deputy Public Defender, argued the cause for respondents K.M. and C.M. (*Yvonne Smith Segars,* Public Defender, attorney).

*Mary M. McManus–Smith* argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Ms. McManus–Smith, Mr. Miller* and *Diana Dunker,* on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

This is a Title Nine abuse and neglect proceeding. The mother and father were divorced and shared joint legal custody of their two children, but the mother had primary physical custody. As a result of an altercation between the mother and the thirteen-year-old daughter, the Division of Youth and Family Services (Division) filed an abuse and neglect complaint. The trial court awarded the Division custody and control of the children, and the children subsequently were placed with their father in Florida. Following a finding of abuse and neglect at the fact-finding hearing, the trial court continued the temporary placement with the father and ordered the Division to provide services to the mother. After multiple case management conferences, but without a final dispositional hearing, the trial court granted the Division's motion to dismiss the proceeding. The court advised the mother that she could seek any custody or parenting time modification through a matrimonial action.

On appeal, the Appellate Division reversed and remanded for a full evidentiary custody hearing, applying the best interests of the children standard. The panel reasoned that the mother was denied due process when the court ordered a change in custody without an evidentiary hearing.

We granted the Division's petition for certification. We now affirm the judgment, but for different reasons. We hold that the statutory framework of Title Nine provides that upon a finding of abuse and neglect, the offending parent or guardian is entitled to a dispositional hearing to determine whether the children may safe-

ly return to his or her custody, and if not, what the proper disposition should be. Consequently, we remand for a dispositional hearing.

## I.

Gloria and Malcolm Moore [1] were divorced in March 2000. They shared joint custody of their two children, Kadina Moore, born November 2, 1992, and Curtis Moore, born April 25, 1994. The children resided with Gloria in New Jersey. During the summer and at other designated times, Malcolm had extended periods of parenting time with the children at his home in Florida.

On the night of March 28, 2006, Kadina text-messaged her father in Florida that she had had an altercation with her mother. Her father telephoned the police. New Jersey State Police Trooper Kelly Bene responded to Gloria's home around 10:15 p.m. The trooper entered the home and found Gloria and the two children visibly upset. The trooper observed an empty alcohol container on the counter, an empty box of wine on the floor, and an empty bottle of vodka in the garbage. When Trooper Bene asked Gloria if she had been drinking, Gloria indicated that she had consumed three or four drinks that evening. Kadina told the trooper that she and her mother had been arguing when her mother threatened to jump into a nearby river. Kadina said she stepped in front of the door to prevent her mother from leaving. At that point her mother grabbed Kadina's arm and the back of her shirt, causing a choking reaction that resulted in Kadina vomiting. The trooper saw no noticeable marks on Kadina's neck, but she did observe vomit on the floor and nail marks on Kadina's arm.

Gloria told the trooper that Kadina had hit and bitten her. In answer to the trooper's question, both children replied that they did not feel in any danger from their mother. After completing her investigation, the trooper left the house, contacted the Divi-

---

[1] The parents' and children's names have been changed to protect their privacy.

sion, and waited outside in her car. A Division worker arrived at the house at around 1:30 a.m. The trooper returned inside the home with the Division worker to find Gloria sleeping, at which time the children had difficulty waking her.

The Division determined that emergent measures were required and removed the children from the house and placed them with a neighbor. Later that day, the children were given medical examinations. Kadina had a slight bruise on her upper arm, but Curtis showed no signs of injury. No criminal charges were filed against Gloria.

On March 31, 2006, the Division filed a complaint against Gloria and Malcolm alleging abuse and neglect and seeking care, custody and supervision of the children. An emergency hearing was held on the same day. Trooper Bene and Nancy Dougherty, the Division intake supervisor, testified about the incident between Gloria and her daughter. Gloria's attorney emphasized that the children were not in any fear of their mother, that they were in school in New Jersey, and that the evidence did not rise to the level of an imminent risk of harm to justify removal. Counsel also indicated that Gloria would not object to the father, Malcolm, taking physical custody of Kadina, but urged the court to return Curtis to Gloria immediately. Malcolm requested that the children be transferred to his care. He noted that they regularly visited him in Florida and had friends there.

At the conclusion of the emergency hearing, the trial court found "an act of child abuse and/or possibly neglect by virtue of [Gloria's] alcoholic condition and what occurred." The court awarded legal custody of the children to the Division, with temporary physical custody in favor of Malcolm, on the condition that he not remove them from New Jersey. The court also ordered the Division to arrange for Gloria to undergo a substance abuse evaluation and to have reasonable visitation with the children.

The next hearing occurred on April 6, 2006. The Division recommended that the children continue in the physical custody of their father and that they be allowed to spend their previously

scheduled spring break with him in Florida. The law guardian for the children agreed and also recommended that Kadina stay in Florida for the remainder of the school year, but that Curtis return to New Jersey after spring break and stay with friends so he could be closer to his mother. Gloria's lawyer argued that any transfer of custody was inappropriate in the current forum. The trial court replied that the issue was temporary physical custody and not the transfer of custody. The court concluded that the children should spend spring break with their father in Florida, and that Kadina should remain there for the remainder of the school year. The court also scheduled an *in camera* interview with Curtis for later that day to determine whether it would be appropriate for him to return to New Jersey after spring break or to remain in Florida. Further, the court ordered Gloria to submit to random urine testing, attend substance abuse evaluations and treatment, and provide information about her paramour to the Division.

Later that day, in the presence of the law guardian, the court interviewed Curtis concerning his view on finishing the school year in Florida. Curtis said he had no objection. Following that interview, the court advised the parties that Curtis should finish the school year in Florida.

At the next hearing on April 18, 2006, in which Malcolm participated by telephone from Florida, no testimony was taken or documentary evidence introduced. The Division recommended that legal custody be returned to Gloria and Malcolm, with Malcolm receiving physical custody. The Division also informed the court that Gloria failed to submit to a required urine screen and had not obeyed the prior order to provide information on her paramour. The law guardian reported that the children were doing well in Florida, but that there were some problems with telephone communications between Gloria and the children.

The court questioned Gloria and Malcolm concerning the progress of the case without placing them under oath. Malcolm elaborated on a threatening phone call he received from Gloria,

and Gloria explained that she missed one urine screening because she was distraught at comments Malcolm made to her regarding the children. The court instructed Gloria to comply with the substance abuse testing, and ordered that in the future the children should initiate telephone contact with their mother. The court also admonished Gloria and told her to remove an offensive voicemail greeting from her telephone.

The fact-finding hearing was scheduled for May 23, 2006. At that hearing, Trooper Bene testified about the events on the night of March 28, 2006. Based on Bene's testimony, the trial court found by a preponderance of evidence that Gloria abused and/or neglected her children.

The Division then sought to dismiss the litigation, stating that the children were safe with their father in Florida and that Gloria was enrolled in a substance abuse program. The Division urged that custody and visitation be addressed through other Family Court proceedings. The law guardian opposed termination of the litigation and recommended that the children stay in Florida until the end of the summer. She expressed that the children wanted to return to New Jersey, and that the Division should make an attempt to reunify the family. Assuming the rehabilitation of Gloria, the children could be returned safely to their mother. Further, the guardian suggested that if Gloria did not overcome her substance abuse problem by the end of the summer, then the court should wait until December of 2006 to determine whether Gloria was fit to resume physical custody of the children. Gloria's attorney agreed and stressed that the Division was required to seek reunification. Malcolm's attorney did not object to the law guardian's proposal.

The trial court denied the Division's motion to dismiss the litigation and ordered Gloria to undergo a psychological evaluation and to continue her substance abuse treatment. The court also ordered that the children remain with their father in Florida, with Gloria receiving supervised visitation.

The next conference was held on July 20, 2006. The Division again sought to dismiss the litigation. The law guardian objected, noting that the children wished to return to their mother's care, and arguing that the best interests of her clients would be served by continuing supervision of Gloria to ensure her sobriety and fitness as a parent. Malcolm's counsel expressed agreement with the Division's position to dismiss the action and stated that Gloria was neither staying sober nor making progress in her treatment. Gloria's counsel disagreed and presented a report from the Hunterdon Drug Awareness Program that not only recognized Gloria's progress, but also reduced the number of sessions from three to two nights per week for her outpatient treatment. The trial court declined to terminate the litigation because Gloria was still in active treatment. The court scheduled the next conference for October 26, 2006.

In a letter dated September 19, 2006, Tara Dyer of the Hunterdon Drug Awareness Program wrote to the Division that Gloria attended all scheduled sessions and was making great progress. The letter noted that Gloria's drug test results were all negative, that her involvement with Alcoholics Anonymous was helping her recover, and that her outpatient treatment had been reduced to one night per week.

On October 20, 2006, the Division sent an updated letter report to the new trial court assigned to the case:

> The Division has spoken with [Kadina] and [Curtis] and is aware that their wishes are to be reunified with their mother in New Jersey. [Kadina] and [Curtis] miss their friends, but are adjusting to living in Florida.... The Division would like to follow the wishes of the children if they would like to return to New Jersey. However, the Division would like to recommend that [Gloria] arrange for counseling upon their return.
>
> Furthermore, if the children are returned to their mother's care, the Division would like to dismiss litigation. The Division can assist [Gloria] in arranging for counseling upon return.
>
> RECOMMENDATIONS:
>
> 1. [Gloria] provide the Division with her paramour's social data as she has yet to do so;
>
> 2. [Gloria] continue in substance abuse treatment and submit to random urine screens; [and]

3. [Kadina] and [Curtis] to return to their mother's care in New Jersey if they still wish to do so.

The parties met with the court on October 26, 2006. No testimony was taken and no documents were admitted into evidence at that time. However, despite the recommendations set forth in the October 20, 2006 report, the Division changed its position and asked to allow the children to remain with their father because they now wanted to stay in Florida. Additionally, the Division recommended that the litigation be terminated.

The law guardian agreed that the children wanted to stay with their father in Florida. Gloria's attorney, expressing surprise, objected to the Division's position. He argued that the recent report from the Division indicated that the children wanted to return to New Jersey, that Gloria was compliant, and that without prior notice of the Division's change in its recommendation, he was not able to prepare Gloria's case.

The trial court rejected Gloria's position and granted the Division's request to terminate the litigation. The court ordered that Gloria and Malcolm share joint legal custody, with Malcolm receiving primary physical custody, and Gloria receiving parenting time. The court also ordered that any change in the current custody arrangement be addressed through the matrimonial docket.

Gloria appealed. In a published opinion, the Appellate Division reversed and remanded for further hearings. *D.Y.F.S. v. G.M.*, 398 *N.J.Super.* 21, 25, 939 *A.2d* 239 (2008). The panel held that the trial court's procedures were "fundamentally unfair" to Gloria and significantly impeded her ability to oppose the loss of physical custody of her children. *Id.* at 35, 939 *A.2d* 239. Further, the panel concluded that the trial court failed to sufficiently assess whether the best interests of the children were served by awarding Malcolm physical custody. *Ibid.* Although the panel affirmed the trial court's finding of abuse and/or neglect and the temporary transfer of physical custody of the children to their father, it held that the trial court erred in failing to conduct an analysis of the children's best interests before transferring physical custody of

the children and dismissing the litigation. *Id.* at 35–39, 939 *A.*2d 239.

Additionally, the panel found that several of the hearings lacked the requisite formality necessary for proceedings that contemplate "such significant consequences," and thus deprived Gloria of her due process rights. *Id.* at 38, 939 *A.*2d 239. The panel noted that no reports from her substance abuse treatment were introduced into evidence, no expert was called to testify as to the extent of her addiction, and no other testimony was taken on the issue. *Ibid.* The panel concluded that the lack of formality in the hearings rendered the trial court proceedings deficient. *Id.* at 39, 939 *A.*2d 239. It was the panel's view that the transfer of physical custody to a non-custodial parent was not a "placement" within the meaning of *N.J.S.A.* 9:6–8.54. *Id.* at 41–44, 939 *A.*2d 239. The panel remanded for a custody hearing to "determine whether custody should remain as modified, or whether custody should be returned to the initial custodial parent, subject to conditions and [the Division's] continued supervision." *Id.* at 51–52, 939 *A.*2d 239.

We granted the Division's petition for certification, 195 *N.J.* 520, 950 *A.*2d 907 (2008), and granted amicus curiae status to Legal Services of New Jersey.

## II.

The Division argues that a full evidentiary hearing was not necessary prior to termination of the litigation. It maintains that when the litigation was dismissed, its involvement with the Moore family was no longer justified because the children were safely with their father in Florida and their mother was in substance abuse treatment. The Division points out that at the time of dismissal, the mother regained joint legal custody of the children with parenting time and telephone contact rights. Thus, the Division contends that there was no basis for the Appellate Division to conclude that the termination of the litigation resulted in constructive termination of Gloria's parental rights. The Division urges that adequate protection of the mother's rights were

afforded at the trial court hearings and are available through other Family Court proceedings. Consequently, there is no "especially compelling" reason to justify the application of the fundamental fairness doctrine. The Division also contends that the Appellate Division judgment is in conflict with other decisions of that court.

In contrast, Gloria requests that we affirm the Appellate Division's decision because, absent a fair evidentiary hearing, she was denied due process. She maintains that it is a "fundamental injustice" to terminate Title Nine proceedings without considering the best interests of the children and the collateral consequences of dismissing the litigation. Gloria also contends that there is no conflict between the Appellate Division decision in her case and those cited in opposition by the Division.

The law guardian[2] filed a brief on behalf of the children, contending that the Appellate Division's ruling was correct; that the procedures employed were deficient; that both parents testified at times without being placed under oath; that no documents were admitted into evidence; that counsel was allowed to make material representations of fact based on hearsay; that the bulk of the hearings consisted of colloquies between the court and the parties; and that before the decision to change the children's residential custody was made, an evidentiary hearing and consideration of each child's best interests was required. The law guardian points out that the rights guaranteed to an offending parent must be guaranteed not just at the fact-finding hearing, but at every stage of the proceedings.

Amicus Legal Services argues that the procedures employed by the trial court were unfair, denied the mother due process, and violated basic rules of evidence and trial practice. Amicus contends that once a trial court finds a parent has abused or

---

[2] Different law guardians represented the children at various stages of the proceedings. We note that the law guardian's stance before us represents a change in a prior position.

neglected a child, the court must address three issues: whether the Division has made reasonable efforts to reunite the child with the offending parent; whether the child can safely return to the home; and, if not, what permanent living situation serves the best interests of the child. Amicus maintains that a Title Nine "placement" includes the placement of a child with a non-custodial parent and that to conclude otherwise denies a parent of the statutorily required procedures that ensure the right to plenary permanency hearings. It asserts that the Appellate Division mistakenly substituted the child custody standard, i.e. the best interests of the child standard, for the child welfare standard required for a Title Nine action such as this. The latter standard applies and requires the Division to seek an alternative placement for the child only when it is proven that the child cannot safely return home within a reasonable period of time. Amicus urges a remand for an adjudication under the child welfare standard.

### III.

### A.

Preliminarily, we note that this case does not present us with conflicting testimony for which the trial court must make findings of fact. In those cases we generally "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." *D.Y.F.S. v. E.P.*, 196 *N.J.* 88, 104, 952 *A.*2d 436 (2008) (quoting *D.Y.F.S. v. M.M.*, 189 *N.J.* 261, 293, 914 *A.*2d 1265 (2007)). Moreover, we recognize that "[b]ecause of the family courts' special . . . expertise in family matters, appellate courts should accord deference to family court factfinding." *Cesare v. Cesare*, 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998). Nevertheless, when no hearing takes place, no evidence is admitted, and no findings of fact are made, different principles apply. On those rare occasions, appellate courts need not afford deference to the conclusions of the trial court.

██ We have often stated that "[p]arents have a constitution-ally protected right to maintain a relationship with their children." *M.M., supra,* 189 *N.J.* at 279, 914 *A.*2d 1265. Although those rights are fundamentally important, they are not absolute, and "must be balanced against the State's *parens patriae* responsibili-ty to protect the welfare of children." *D.Y.F.S. v. G.L.,* 191 *N.J.* 596, 605, 926 *A.*2d 320 (2007) (quotations omitted). In balancing those competing concerns, a court must ensure that the statutory and constitutional rights of the parent or guardian are scrupulous-ly protected. *In re Guardianship of J.C.,* 129 *N.J.* 1, 10, 608 *A.*2d 1312 (1992).

## B.

With those guiding principles, we turn now to the relevant statutes in this case. The Legislature charged the Division with the responsibility of protecting the health and welfare of the children of this state. *N.J.S.A.* 30:4C–4. The procedures for accomplishing those obligations are set forth in Title Nine, *N.J.S.A.* 9:6–8.21 to –8.73, and Title Thirty, *N.J.S.A.* 30:4C–11 to – 14. We are largely concerned in this case with the statutory framework of Title Nine, and therefore we summarize the main requirements of that title.

As noted, the paramount concern of the Division is the safety of our children. *N.J.S.A.* 9:6–8.8(a). A "parent or guardian" is broadly defined to mean "any natural parent, adoptive parent, resource family parent, stepparent, paramour of a parent or any person, who has assumed responsibility for the care, custody or control of a child or upon whom there is a legal duty for such care." *N.J.S.A.* 9:6–8.21(a).

If a child's life or health is in imminent danger, the authorities may temporarily remove the child from the offending parent or guardian. *N.J.S.A.* 9:6–8.27(a); *N.J.S.A.* 9:6–8.29. In that event, the Division is authorized to arrange for "immediate medical screening of the child and shall have legal authority to consent to such screening." *N.J.S.A.* 9:6–8.30(c). After a complaint is filed,

the court may enter preliminary orders for the protection of the child, including the return of "the child to the custody of his parent or guardian from whose custody or care the child was removed, pending a final order of disposition." *N.J.S.A.* 9:6–8.31(d). At any time during the proceedings, the alleged offending parent may make an application for the return of the child, which should be granted unless there is "an imminent risk to the child's life, safety or health." *N.J.S.A.* 9:6–8.32.

In any case in which the Division accepts the care or custody of a child, "the [D]ivision shall make reasonable efforts, prior to placement, to preserve the family in order to prevent the need for removing the child from his home." *N.J.S.A.* 9:6–8.8(b)(2). Even after placement, "the [D]ivision shall make reasonable efforts to make it possible for the child to safely return to his home." *Ibid.* Once the Division concludes that reunification is not the ultimate goal, it must make "reasonable efforts ... to place the child in a timely manner." *N.J.S.A.* 9:6–8.8(b)(4).

A fact-finding hearing shall be held to determine whether the Division has shown by a preponderance of the evidence that the child was abused or neglected. *N.J.S.A.* 9:6–8.44; *N.J.S.A.* 9:6–8.46(b). Typically, there may be several case management conferences prior to the fact-finding hearing. The evidence presented at the fact-finding hearing must be "competent, material and relevant." *N.J.S.A.* 9:6–8.46(b).

*N.J.S.A.* 9:6–8.50 sets forth the options available to the trial court at the conclusion of the fact-finding hearing:

a. If facts sufficient to sustain the complaint are established, the court shall enter an order finding that the child is an abused or neglected child and shall state the grounds for said findings.

b. If the proof does not conform to the specific allegations of the complaint, the court may amend the allegations to conform to the proof; provided, however, that in such case the respondent shall be given reasonable time to prepare to answer the amended allegations.

c. If facts sufficient to sustain the complaint under this act are not established, or the court concludes that its assistance is not required on the record before it, the court shall dismiss the complaint and shall state the grounds for the dismissal.

d.   If the court makes a finding of abuse or neglect, it shall determine, based upon the facts adduced during the fact-finding hearing, and upon any other facts presented to it, whether a preliminary order pursuant to [*N.J.S.A.* 9:6–8.31] is required to protect the child's interests pending a final order of disposition. The court shall state the grounds for its determination.   In addition, a child found to be abused or neglected may be removed and remanded to a place designated by the court or be placed in the custody of a suitable person, pending a final order of disposition, if the court finds that there is a substantial probability that the final order of disposition will be an order of placement under [*N.J.S.A.* 9:6–8.54].
e.   If the court finds that the child is an abused or neglected child as defined in this act, it may refer any aspect of the matter, including anything related to the child and the parent or guardian, to the [D]ivision, ordering that the [D]ivision provide such services as are deemed appropriate to the ends of protecting the child and rehabilitating and improving family life, wherever possible.   In the event of such referral, the court may suspend any dispositional hearing indefinitely.   The [D]ivision shall report the status of the case so referred to the court annually in writing, a copy to be served upon the parent or guardian and the law guardian. The [D]ivision shall also report its intent to terminate services in a case so referred to the court in writing.

Thus, if the trial court makes a finding of abuse and neglect, it shall determine whether a preliminary order pursuant to *N.J.S.A.* 9:6–8.31 is needed to protect the child's interests pending the dispositional hearing, *N.J.S.A.* 9:6–8.50(d), and "wherever possible," the court may order the Division to "provide such services as are deemed appropriate to the ends of protecting the child and rehabilitating and improving family life," *N.J.S.A.* 9:6–8.50(e).

Following the fact-finding hearing, the dispositional hearing may commence immediately or at some other time.   *N.J.S.A.* 9:6–8.47. Prior to the dispositional hearing, "the court may adjourn the proceedings to enable it to make inquiry into the surroundings, conditions, and capacities of the persons involved in the proceedings."   *N.J.S.A.* 9:6–8.48(b).

A dispositional hearing must be held to determine the appropriate outcome of the case.   *N.J.S.A.* 9:6–8.50. At the dispositional hearing the court may consider "only material and relevant evidence."   *N.J.S.A.* 9:6–8.46(c).   Notably, the court has multiple alternatives in determining the appropriate disposition.   The court may enter a suspended judgment, *N.J.S.A.* 9:6–8.52;   release the child to the custody of the parent or guardian responsible for the child's care at the time of the filing of the complaint, *N.J.S.A.* 9:6–

8.53; place the child with "a relative or other suitable person," *N.J.S.A.* 9:6–8.54(a); make an order of protection, *N.J.S.A.* 9:6–8.55; place the offending parent or guardian on probation, *N.J.S.A.* 9:6–8.56; and/or require the offending person to accept therapeutic services, *N.J.S.A.* 9:6–8.51(a). In all cases the court "shall state the grounds for any disposition made." *N.J.S.A.* 9:6–8.51(b).

If the child remains outside the home and either the Division has provided the services ordered or twelve months have passed since the child was removed, the trial court shall hold a permanency hearing, in which the goal is to provide for the child's long term living arrangement. *N.J.S.A.* 30:4C–61.2. The permanency hearing will determine whether the family will continue towards reunification or whether an alternative plan must be adopted. *Ibid.*

In some cases, the alternative plan may lead to the Division filing a petition seeking the termination of parental rights or the filing of a kinship legal guardianship action. However, the Division is not required to file a petition seeking the termination of parental rights if "[t]he child is being cared for by a relative and a permanent plan for the child can be achieved without termination of parental rights." *N.J.S.A.* 30:4C–15.3(a). Similarly, termination is not required if the Division "has documented in the case plan ... a compelling reason for determining that filing the petition would not be in the best interests of the child." *N.J.S.A.* 30:4C–15.3(b).

IV.

A.

■ We turn next to review the proceedings below in light of the statutory scheme of Title Nine. Initially, we note our agreement with the Appellate Division that the testimony of the trooper at the fact-finding hearing was sufficient for the trial court to conclude by a preponderance of the evidence that the mother

abused or neglected her daughter. That conclusion is not contested.

As noted above, the Division moved to dismiss the proceedings immediately after the fact-finding hearing. Under Title Nine, after the fact-finding hearing, the court may dismiss the complaint if it concludes that either its assistance is not required on the record before it, or the Division failed to establish abuse or neglect. *N.J.S.A.* 9:6–8.50(c). Consequently, because the trial court inferentially concluded that its assistance was required and also made a finding of abuse or neglect, dismissal was not appropriate. The trial court properly denied the Division's request to dismiss the action at that time.

Both the fact-finding hearing and the dispositional hearing are critical stages in Title Nine proceedings. Those hearings must be conducted "with scrupulous adherence to procedural safeguards," *D.Y.F.S. v. A.R.G.*, 179 *N.J.* 264, 286, 845 *A.*2d 106 (2004), and the trial court's conclusions must be based on material and relevant evidence, *N.J.S.A.* 9:6–8.46(b), (c). The witnesses should be under oath and subject to cross-examination. *D.Y.F.S. v. J.Y.*, 352 *N.J.Super.* 245, 265, 800 *A.*2d 132 (App.Div.2002). As concisely stated by the court in *J.Y.*, "this critically important part of the business of the Family Part demands meticulous adherence to the rule of law." *Ibid.* Just as important, the trial court must state the grounds for its disposition. *N.J.S.A.* 9:6–8.51(b).

This case is especially troubling because shortly before the dismissal order, the Division's report of October 20, 2006 recommended that the children "return to their mother's care in New Jersey if they still wish to do so." The clear implication of that recommendation was that the children could be safely returned to their mother. Moreover, there was no evidence that the children feared for their safety when they were in the custody of their mother.

However, without prior notice, both the law guardian and the Division orally changed their position on October 26, 2006,

when they informed the court that based on the wishes of the children, the children should remain in Florida. Rather than relying on the wishes of the children, the Division should have focused on whether the children could be safely returned to the custody of their mother.

We agree with the Appellate Division's deep concern with the "procedures employed during the several hearings that followed the fact-finding hearing," and in particular, the denial of the mother's "basic due process rights" at the final proceeding on October 26, 2006. *G.M.*, *supra*, 398 *N.J.Super.* at 37–38, 939 *A.*2d 239. The panel correctly noted the inadequacy of the proceeding due to the lack of sworn witnesses, the failure to introduce documentary evidence, the failure to call expert witnesses, and the termination of the proceeding over the mother's "well-founded claim of surprise." *Id.* at 38, 939 *A.*2d 239. Nevertheless, we disagree with the panel's judgment to remand for a custody determination based on the best interests of the child standard. The key deficiency of the proceeding below was not in the failure to hold a custody hearing, but in the failure to hold a dispositional hearing.

At the dispositional hearing, both sides may present material and relevant evidence for the court to determine whether the children may safely be released to the custody of their mother, who was responsible for their care at the time of the filing of the complaint, or whether, consistent with *N.J.S.A.* 9:6–8.51, some other disposition is appropriate. Consequently, we remand for a dispositional hearing.[3]

---

[3] The Division informed us at argument that, as a result of the judgment of the Appellate Division, a custody hearing was in process based on the best interests of the children standard. We note that a parent, in this case the father, may always initiate a request for change in custody against the other parent, here the mother. *See Baures v. Lewis*, 167 *N.J.* 91, 116, 770 *A.*2d 214 (2001) (recognizing that "a change in custody [is] governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis"). Nevertheless, the availability of a non-custodial parent to care for the children does not alter the

### B.

██ We make one other observation. The Appellate Division noted that the trial court's continuing physical custody with the father was not a "placement" under Title Nine. *G.M.*, *supra*, 398 *N.J.Super.* at 51, 939 *A.*2d 239. We disagree. Although "placement" is not defined in Title Nine, we believe that the Legislature intended to include a non-custodial parent, such as the father here, as "a relative or other suitable person" with whom the Division was authorized to place the child. *N.J.S.A.* 9:6–8.54(a).

██ We reach this conclusion by applying our rules of statutory construction. The primary objective of the court is to ascertain the intent of the Legislature, and the "best indicator of that intent is the statutory language." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). In reviewing that language, courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *Ibid.* (citation omitted). If there is ambiguity in the statutory language, the court may "utiliz[e] extrinsic evidence when it is helpful." *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004). We may also resort to extrinsic evidence when "a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *DiProspero, supra,* 183 *N.J.* at 493, 874 *A.*2d 1039.

We begin with the plain words of the statute, read in context with the related portions of Title Nine and Title Thirty. Initially, we note that the statutes authorizing the several dispositions available to the court expressly differentiate between the situation when the child is permitted to return to the custody of the offending parent or guardian and when the child is not permitted to return to the offending parent or guardian. Thus, when the child is to be returned to the offending parent or guardian, the

---

responsibility of the Division to follow the statutory framework for litigating a Title Nine action.

statute refers to "releas[e]" of the child, *N.J.S.A.* 9:6–8.51(a)(2) and *N.J.S.A.* 9:6–8.53(a), and when the child is not to be returned to the offending parent or guardian, the statute refers to "placing," or "placement" of the child, *N.J.S.A.* 9:6–8.51(a)(3) and *N.J.S.A.* 9:6–8.54.

Further, there is reference to "plac[ing the child] in the custody of *a suitable person*" in *N.J.S.A.* 9:6–8.31(b), and to "plac[ing] the child in the custody of *a relative or other suitable person* " in *N.J.S.A.* 9:6–8.54(a). (Emphases added). A parent who did not have primary physical custody, i.e., a non-custodial parent, certainly may be a "suitable person" and is obviously a "relative" of the child. Consistent with the plain words of Title Nine, we find no reasonable basis to exclude a non-custodial parent from being considered as someone with whom the court may place the child. *See N.J.S.A.* 9:6–8.54.

Additionally, we note that in Title Thirty, in addressing the notice that is required concerning a summary hearing for placement, there is a reference to giving notice and an opportunity to be heard to the "child's parents including a non-custodial parent or legal guardian." *N.J.S.A.* 30:4C–61(c)(3); *see also N.J.S.A.* 30:4C–61.2(b)(3) (the same). Thus, when the Legislature intended to target a non-custodial parent, it expressly did so. Indeed, the non-custodial parent is a person the Division will naturally consider in making any placement. Given the significant number of children with unmarried, separated, or divorced parents, it seems unlikely that the Legislature failed to consider the strong possibility that a non-custodial parent would be an appropriate placement for an abused or neglected child. The Legislature did not express that a different set of procedures should apply when a non-custodial parent is available to care for a child lawfully removed from the custodial parent under Title Nine. In our view, if the Legislature intended that transferring temporary physical custody to a non-custodial parent was not to be deemed a placement under Title Nine, it would have stated so.

To be sure, the inherent rights of a non-custodial parent may distinguish him or her from other caregivers, *see Watkins v. Nelson*, 163 *N.J.* 235, 245, 748 *A.*2d 558 (2000), but that status does not change the fact that the transfer of physical custody during a Title Nine action to the non-custodial parent is a placement under Title Nine. In sum, we find no justification to interpret the plain language of Title Nine to exclude a non-custodial parent from the reach of the word "placement." [4]

### V.

The judgment of the Appellate Division is affirmed in part and modified in part. The case is remanded for a hearing to determine the appropriate disposition pursuant to *N.J.S.A.* 9:6–8.51.

*For affirmance in part/modification in part/remandment—* Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.

---

[4] To the extent the panel in *D.Y.F.S. v. R.G.*, 397 *N.J.Super.* 439, 448, 937 A.2d 1013 (App.Div.2008), expressed a different view, we disapprove.