# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3971-17T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

J.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.S.,

     a Minor.

_____

       Submitted November 27, 2018 – Decided December 4, 2018

       Before Judges Fisher and Hoffman.

       On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0005-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer M. Kurtz, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Hannah F. Edman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for minor (David B. Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

In February 2016, representatives of a Mt. Holly hospital made a referral to plaintiff Division of Child Protection and Permanency regarding the pregnant and inebriated defendant J.S. (Joan, a fictitious name), who appeared in the hospital's emergency room due to placental abruption. She tested positive for amphetamines and a blood-alcohol reading more than five times the legal limit. Joan gave birth but the child died due to prematurity. Her other child, M.M. (Mary), born in March 2014,[1] was in the custody of Joan's mother: S.S. (Samantha). The Division soon learned that Samantha had killed her then boyfriend's three-year old child and was convicted of manslaughter in 1993; she

---

[1] Joan named two potential fathers of the child but both were ruled out by paternity testing. Joan also has another daughter who was in her father's sole custody and is not a party to or the subject of this litigation.

served fifteen years of a thirty-year prison sentence. Mary was removed from Samantha's care and, finding suitable none of Joan's other suggested caretakers, the Division placed Mary with foster parents. In the meantime, the Division offered various services to Joan and commenced this guardianship action in July 2017. The judge conducted a three-day trial in March 2018, and rendered a written decision and a judgment of guardianship on April 19, 2018.

Defendant appeals, arguing the judge erred in finding there was clear and convincing evidence on the four prongs of N.J.S.A. 30:4C-15.1(a) to warrant the termination of her parental rights to Mary. We disagree and affirm substantially for the reasons set forth in Judge Gerard H. Breland's well-reasoned written opinion.

In considering the issues presented, we start by recognizing that parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' [that are] 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a

matter of public concern as being in the interests of the general welfare."

N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347.

But the constitutional right to the parental relationship is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when a parent's rights must be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

4

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

The judge's findings on the first and second prongs centered on Joan's considerable alcohol-abuse issues. The judge found that Joan "has had problems with alcohol for nearly half her life" and her longest period of sobriety in those years was five months. He found Joan's "ability to appropriately care for [Mary] would be seriously compromised" in light of that history, providing as an example that the level of alcohol in Joan's system when she gave birth in 2016 to the child that died was "high enough to have killed her." Judge Breland found that this considerable concern and the "little to no progress" shown by Joan in treating the problem supported his findings on the first two prongs and favored termination.

The judge also determined there was clear and convincing evidence regarding the third prong to support termination. He referred to Joan's ineffectual attempts at addressing her alcohol problem: her failure to take full advantage of the services offered; her submission to only three drug screens (two of which were positive for either marijuana or alcohol); and her failure to comply with treatment programs throughout 2017 before enrolling in the

A-3971-17T2

program in which she remained at the time of trial. The judge also found suggested alternatives to termination to be inadequate.

And Judge Breland found that clear and convincing evidence offered on the fourth prong – the "fail-safe against termination," R.G., 217 N.J. at 559 – favored termination. The judge chiefly relied on the Division expert's credibility opinions. The judge found that termination would not do more harm than good because the "prognosis for [Joan] providing long-term stability [for Mary] was not good." The judge recognized that the Division expert found a bond between Joan and Mary but he also found a bond between Mary and the resource parents. He concluded that even though there could be "some enduring harm with separation from either," the child's best interests warranted termination because the judge did not believe Joan's "parenting capacity would change much in the near future" and that Joan would need six to twelve months of sobriety outside of her current inpatient program "to even consider the prospect of reunification." In comparison, the judge found that the resource parents were "in a position right now to take care of [Mary] as they have been doing for over two years."

Judge Breland found these facts and analyzed all these and the other circumstances recounted in his nineteen-page opinion in concluding that all four statutory prongs favored termination. The judge's findings are supported by

evidence he found credible and are, therefore, deserving of appellate deference. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge soundly applied those findings to the governing legal principles in concluding that entry of the judgment under review was in the child's best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3971-17T2