# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1847-17T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

C.R.,

     Defendant-Appellant,

and

M.T.C.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.C.C.,

     a Minor.

_____

Argued November 28, 2018 – Decided December 21, 2018

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0020-17.

Ryan T. Clark, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ryan T. Clark, on the briefs).

Joann M. Corsetto, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Joann M. Corsetto, on the brief).

Rachel E. Seidman, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Rachel E. Seidman, on the brief).

PER CURIAM

Defendant C.R. (Carol)[1] appeals from a December 8, 2017 Family Part Judgment of Guardianship terminating her parental rights to her son A.C.C. (Alan), who was born in 2015. We are convinced the court correctly determined the New Jersey Division of Child Protection and Permanency proved by clear and convincing evidence that termination of defendant's parental rights is in Alan's best interests, and affirm.

---

[1] We employ initials and pseudonyms for the parties and the children for clarity and to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(12).

Carol and M.T.C. (Michael) are the biological parents of three children, T.C. (Tara) and M.T.C., Jr. (Mark), who were born in 2012, and Alan. The Division first became involved with Carol and Michael following Tara's birth in January 2012. The hospital where Tara was born communicated concerns about Carol and Michael's apparent developmental disabilities and their effect upon the parents' ability to care for the child. The Division implemented a safety plan which required that Carol's parents supervise all of Carol and Michael's contact with Tara.

In February 2012, the Division conducted an emergency removal of Tara when it discovered for the third time that Carol's parents permitted Carol to care for Tara without their supervision. The court granted the Division temporary custody, care and supervision of Tara, ordered Carol and Michael to comply with services and directed supervised visits between Tara and her parents. Carol and Michael completed psychological evaluations. The psychologist who performed the evaluations recommended that neither parent care for Tara without supervision. The psychologist stated that Carol and Michael "are not capable of parenting because they cannot retain information and are unable to

A-1847-17T1

fully comprehend." The psychologist reported that Carol was "assessed as being mentally retarded."[2]

Carol underwent a psychiatric evaluation in May 2012. The psychiatrist diagnosed Carol with cognitive disorder, provisional learning disabilities, provisional pervasive developmental disorders, impairment in parental abilities secondary to psychiatric problems, and borderline intellectual functioning versus mental retardation. The psychiatrist recommended only supervised visitation between Carol and Tara.

In December 2012, Carol gave birth to Mark in a hospital different than the one where Tara was born. The hospital made a referral to the Division, which determined Carol and Michael were unable to care for Mark because Carol was not capable of parenting independently and Michael had failed to comply with services. The Division conducted an emergency removal of Mark upon his release from the hospital, and the court granted the Division care, custody and supervision of Mark.

---

[2] We recognize that modern social norms reject the label "mentally retarded" as an offensive and demeaning term when used to refer to individuals with any kind of developmental disabilities or cognitive limitations. We use it here only because it was part of the record developed before the Family Part. We do not intend any disrespect.

The Division obtained a psychological assessment of Carol in February 2013, stating Carol has "severe intellectual limitations," "great difficulty understanding even simple directions and significant impairments in her abstract thinking and reasoning." The psychologist opined that Carol's "prognosis remains quite poor" and her condition "is quite chronic and disabling, and . . . unlikely to remit even with services and interventions." The psychologist recommended that "[o]ther permanency planning for the minor children besides reunification . . . is indicated and supported."

The Division also obtained an updated psychiatric evaluation of Carol in May 2013. The psychiatrist reported that Carol had a "full scale IQ [of] 54 . . . which puts her in the moderate level of mental retardation" and "clearly [had] significant cognitive disabilities and learning disabilities since she was a fairly young child."

Six months later, in November 2013, Carol and Michael made a voluntary surrender of their parental rights to Tara and Mark.[3]

In October 2015, Carol gave birth to Alan. The hospital where Alan was born made a referral to the Division. Carol and Michael agreed to a safety plan

_____

[3] The same resource family adopted Tara and Mark. They reside in Florida.

requiring that a family friend supervise their contact with Alan.[4] Two months later, the family friend could no longer supervise Carol and Michael's contact with the child, and the Division conducted an emergency removal of Alan from their care. On December 18, 2015, the court entered an order granting the Division temporary care, custody and supervision of the child. The court also ordered services for Carol and Michael and supervised visits with Alan.

In February 2016, Alan was placed in a new resource home following a one-week hospitalization for breathing issues. In March 2016, a cardiac evaluation revealed that Alan had right pulmonary artery stenosis. He underwent a cardiac catheterization. An orthopedist recommended that Alan undergo physical therapy.

Michael voluntarily surrendered his parental rights to Alan in June 2016.[5] On August 29, 2016, the court entered a permanency order finding Carol failed to remediate the circumstances that led to Alan's removal and that there

---

[4] It was initially suggested that Carol's parents serve as supervisors of Carol and Michael's contact with Alan. The Division rejected the suggestion because Carol's parents failed to monitor Carol's contact with Tara in accordance with the safety plan in effect after Tara was born and Carol's mother had previously been substantiated for neglect due to lack of supervision of her own children. Carol's father opposed Alan's placement with him and his wife and refused to attend a psychological evaluation.

[5] Michael is therefore not a party to this appeal.

"continue[d] to be concerns regarding [Carol's] mental health and ability to independently parent her child."

On December 1, 2016, the Division filed a complaint for guardianship. Later that month, Alan's resource parent had a medical condition that precluded continued care of Alan. Alan was placed in St. Clare's Home for Children, a facility that provides residential medical care for children. Alan had pneumonia when he was admitted. He also had diagnoses including developmental delay, hypotonia, chronic asthma, and heart and lung issues. Alan remained in St. Clare's care through the guardianship trial. He has received treatment from a physical therapist, occupational therapist, speech therapist and developmental interventionist, as well as medical evaluations and treatment from specialists including an endocrinologist, pulmonologist, cardiologist, gastrointestinal specialist and ophthalmologist. He requires a special walker, bath chair and high chair.

At the trial, the Division presented the testimony of Division family service specialist Alba Hernandez and Dr. Melissa Rivera Marano, who was qualified as an expert in the field of psychology. Carol testified on her own behalf and presented her mother as a witness. Numerous exhibits were also admitted in evidence.

The court reserved decision following the presentation of the evidence and counsels' closing arguments. The court later issued a decision from the bench. The judge made detailed findings of fact as to each prong of the statutory best-interests-of-the-child standard, N.J.S.A. 30:4C-15.1(a), and determined the Division established by clear and convincing evidence that it was in Alan's best interests to terminate Carol's parental rights.

More particularly, the court found the psychological and psychiatric evaluations of Carol and the testimony of Dr. Marano established that Carol's cognitive limitations rendered her unable to parent Alan "or any other child now or in the foreseeable future." Dr. Marano testified Carol requires ongoing support to manage her own life and that Alan's medical and cognitive issues require the heightened awareness of a parent that Carol lacks the ability to provide. The court found Carol's cognitive limitations render her unable "to eliminate the harm" to Alan and "understand the extent of [Alan's] significant" medical issues and developmental delays. The court concluded Carol's inability to parent endangers Alan's health, safety and development.

The court further found Carol is "both unwilling and unable to provide a safe and stable home for" Alan. The court noted that Carol was only "sporadically compliant" with the numerous services provided by the Division,

failed to regularly attend Alan's therapeutic sessions and had irregular attendance at the supervised visits with Alan. The court found that the credible evidence showed Carol simply lacks the "necessary cognitive ability to parent" Alan and provide an independent home for herself or Alan. The court also determined that Carol is unable to provide the permanency to which Alan is entitled.

The court found the Division provided Carol with numerous and varied services[6] and that the credible evidence, including Dr. Marano's testimony, demonstrated that Carol's "cognitive deficiencies prevented her from benefitting from the services rendered." The court concluded that the Division considered and properly ruled out family members for placement. The evidence showed the maternal grandparents were considered but ruled out as both potential placements for Alan and supervisors for Carol because Carol's mother violated the safety plan that had been put in place for Tara and had a prior substantiation for neglect of her own children. The evidence further showed Carol's mother

---

[6] The evidence showed the Division provided Carol with supervised visitation, individual therapy, parenting skills training, psychological and psychiatric evaluations, bonding evaluations, domestic violence counseling, assistance with completing job applications, and assistance with obtaining services from the New Jersey Division of Developmental Disabilities. The Division also provided Carol with transportation to and from the various services.

lacked an appreciation of Carol's cognitive deficiencies and the manner in which they would affect Carol's ability to parent Alan. Carol's father was ruled out because he did not want Alan placed with him and his wife and he otherwise failed to cooperate with the Division's request for an evaluation. Carol's sister was ruled out because of psychiatric issues.

Last, the court determined that the termination of Carol's parental rights would not do more harm than good. The court noted Alan's "significant health and medical needs" and the evidence establishing Carol's "significant cognitive delays and developmental needs preclude her from meeting [Alan's] needs." The court observed that the bonding evaluation showed Carol was attached to Alan, but Alan "has no sign of attachment to" Carol. The court further found that the family which adopted Tara and Mark planned to adopt Alan and were undergoing an interstate evaluation so they could adopt him.

Satisfied the Division presented clear and convincing evidence establishing the four prongs of the best interests standard, the judge entered a December 8, 2017 order terminating Carol's parental rights to Alan. This appeal followed.

Carol presents the following arguments for our consideration:

LEGAL ARGUMENT

THE TRIAL COURT'S FINDINGS WERE INCOMPLETE AND INADEQUATE TO SUSTAIN A JUDGMENT TERMINATING [CAROL's] PARENTAL RIGHTS BY CLEAR AND CONVINCING EVIDENCE AS REQUIRED BY [N.J.S.A.] 30:4C-15 AND 30:4C-15.1[.]

POINT I

The Trial Court Erred in Finding that the Division Demonstrated by Clear and Convincing Evidence that the Son's Health and Development Had Been or Will Continue to be Endangered by the Parental Relationship under the First Prong.

POINT II

The Trial Court Erred in Finding that the Division Demonstrated by Clear and Convincing Evidence that the Mother was Unwilling or Unable to Eliminate the Harm Facing the Son or is Unable or Unwilling to Provide a Safe and Stable Home for Him and the Delay of Permanent Placement Will Add to the Harm under the Second Prong.

POINT III

The Division failed to Prove Prong Three was Met Where it Failed to Provide Services that were Reasonable Under All the Circumstances and the Court did not Explore Alternatives to Termination.

A. The Division's General Approach, Rather Than Tailored Services, was Not Reasonable.

11

B. The Division Provided Services That Were Not Appropriate Under the Circumstances in Violation of the Americans with Disabilities Act Under 42 U.S.C. Sec. 12101 ET SEQ.

C. The Court Erred by Finding that the Division Considered Alternatives to Termination where it Refused to Place the Son with his Grandmother.

POINT IV

The Trial Court Erred in Finding that the Division Demonstrated by Clear and Convincing Evidence that Termination of the Mother's Parental Rights Will Not Do More Harm than Good.

A parent has a constitutionally protected right "to enjoy a relationship with his or her child." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012). A parent's interest must, at times, yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009).

When terminating parental rights, the court must consider the "best interests of the child." K.H.O., 161 N.J. at 347. The Division's petition to

terminate parental rights may only be granted if the following four prongs enumerated in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence:

> (1)    The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)    The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3)    The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4)    Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "[T]he cornerstone of the inquiry [under N.J.S.A. 30:4C-15.1(a)] is not

13

whether the biological parents are fit but whether they can cease causing their child harm." In re Guardianship of J.C., 129 N.J. 1, 10 (1992).

Our review of a trial court order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "A Family Part's decision to terminate parental rights will not be disturbed when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 368 (App. Div. 2015) (citing F.M., 211 N.J. at 448). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448. This enhanced deference is particularly appropriate where the court's findings are founded upon the credibility of the witnesses' testimony. N.J. Div. of Youth & Family Servs. v. H.B., 375 N.J. Super. 148, 172 (App. Div. 2005) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., 191 N.J. at 605). No deference

is given to the trial court's "interpretation of the law," which we review de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

Measured against these principles, we discern no basis to reverse the court's order. Having carefully reviewed the record, we are satisfied the judge conducted the requisite fact-sensitive analysis of the statutory factors, see K.H.O., 161 N.J. at 348, and that there is sufficient credible evidence supporting the court's findings as to each of the four prongs of the best interests standard. We affirm substantially for the reasons set forth in the court's oral decision.

We add only that we reject Carol's argument that the Division violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, by failing to provide her with services that accommodated her disabilities. The argument was not raised before the trial court and does not involve jurisdictional or public interest concerns. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)) ("[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'"). Moreover, "the ADA does not provide a defense to a termination of parental

rights proceeding" because to do so would "improperly elevate the rights of the parent above those of the child." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001). Furthermore, similar to the circumstances in A.G., the Division here provided defendant services to help her address the problems engendered by her cognitive limitations. As was the case in A.G., "those efforts did not bear fruit." Ibid.

We also note that we agree with Carol's contention that the Division did not comply with the requirements of N.J.S.A. 30:4C-12.1(b). The Division failed to provide a list of reasons for its decision ruling out the maternal grandparents and aunt as potential placements for Alan, informing them of their right to appeal the determination, alerting them that they could notify the Division if there was a change of circumstances and advising them that a termination of parental rights might occur if the Division maintained custody of Alan for more than six months. See N.J.S.A. 30:4C-12.1(b)(2) to (4). However, a reversal of an order terminating parental rights based on the Division's failure to comply with the statute "is warranted only when it is in the best interests of the child." N.J. Div. of Youth & Family Servs. v. K.L.W., 419 N.J. Super. 568, 581 (App. Div. 2011). The record does not support such a finding here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-1847-17T1