# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1498-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

T.V.P.,

    Defendant-Appellant,

and

H.K.,

    Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.A.P.

_____

Submitted October 3, 2019 – Decided October 10, 2019

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0071-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth H. Smith, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Casey Jonathan Woodruff, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Margo E.K. Hirsch, Designated Counsel, on the brief).

PER CURIAM

Defendant T.V.P. appeals a judgment[1] terminating her parental rights to the youngest of her four children, E.A.P. (Ellen), born in 2013.[2] Defendant contends the Division of Child Protection and Permanency (Division) failed to prove all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian joins the Division in supporting the judgment.

---

[1] The same judgment also terminated the parental rights of Ellen's biological father, H.K., who is not a party to this appeal. Defendant's three other children are in the custody of their father, A.G., and are not parties to this appeal.

[2] We use initials and pseudonyms to identify the parties to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

A-1498-18T1

It is axiomatic that parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' and 'rights far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare . . . ." N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347.

The constitutional right to the parental relationship, however, is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009). To effectuate these concerns, the Legislature created a test for determining whether a parent's rights must be terminated in the child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove the following four prongs by clear and convincing evidence:

A-1498-18T1

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

These four prongs are not independent of one another. Rather, they "are interrelated and overlapping[,] . . . designed to identify and assess what may be necessary to promote and protect the best interests of the child." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006). Parental fitness is the crucial issue. K.H.O., 161 N.J. at 348. Determinations of parental fitness are very fact sensitive and require specific evidence. Ibid. Ultimately, "the purpose of termination is always to effectuate the best interests of the child, not the punishment of the parent." Id. at 350.

4

Having reviewed the record in view of those legal standards, we conclude Judge James R. Paganelli's factual findings are fully supported by the record, and, in light of those facts, his legal conclusions are unassailable. We are satisfied the evidence in favor of the guardianship petition overwhelmingly supports the judge's decision to terminate defendant's parental rights.

Accordingly, we need not set forth at any length the factual basis for the judge's decision. Those circumstances were fully explored in his thorough forty-six-page written decision. Instead, we incorporate by reference the judge's thorough factual findings and legal conclusions and highlight the most pertinent facts adduced at the four-day trial.

To support its claim that defendant's parental rights should be terminated, the Division presented the testimony of two caseworkers and the expert testimony of Samiris Sostre, M.D., who performed a psychiatric evaluation of defendant, and Barry Katz, Ph.D., who conducted a bonding evaluation between defendant and Ellen. The Division also introduced in evidence nearly fifty documents, including the caseworkers' reports and the doctors' evaluations. Defendant did not testify or present any evidence.

Judge Paganelli discussed in detail defendant's long psychiatric history, including her record of non-compliance with mental health services. Defendant

5

was diagnosed by Dr. Katz and Dr. Sostre as suffering from schizophrenia and post-traumatic stress disorder (PTSD). During an interview with the Division, defendant self-reported "that she was first diagnosed with depression, anxiety, paranoid type schizophrenia[,] and PTSD" at least ten years prior. She told the caseworker "she believed it was optional for her to comply with mental health services."

Crediting the opinion of Dr. Katz, the judge noted defendant "has been non-compliant with services over time, resulting in an exacerbation of instability, severe symptomatology and parental neglect." And, "Dr. Sostre warn[ed] that poor compliance with medications will certainly lead to a deterioration and fluctuations in psychotic symptoms."

Turning to the four prongs of the best interests test, the judge aptly recognized "mental illness, alone[,] does not disqualify a parent from raising a child." Where, as here, a parent refuses treatment, however, "the mental illness poses a real threat to [the] child . . . ." The judge also found defendant's "significant parenting deficits have not remitted" even though the Division offered services for several years.

As is often the case, the findings regarding the first prong informed and overlapped the second. See R.L., 388 N.J. Super. at 88. The judge found

defendant was unable or unwilling to eliminate the harm that endangered Ellen and caused her removal because defendant did not comply with services offered to address her mental health issues. Because defendant failed to obtain stable housing, the judge also determined defendant could not provide Ellen with a safe or suitable home.

Regarding the third prong, the judge found the Division made reasonable efforts to provide services to defendant to facilitate reunification with Ellen, including therapeutic visitation, mental health treatment referrals, individual therapy, transportation assistance, in-home services, and parenting classes. Noting the Division assessed relative placement and kinship legal guardianship, the judge found the agency considered alternatives to termination. Because relatives were not available, however, the judge concluded those options were not viable here.

In considering the fourth prong, the judge recognized Ellen identified defendant as her mother, but appeared to be confused about "the reality of their relationship." During the trial, Ellen was transferred to a new resource home, so the Division did not conduct a bonding evaluation. But, the caseworker testified that Ellen's new resource parent was interested in adopting her. The Division also identified thirty-three additional homes that might be interested in

adopting Ellen. Finding termination would free Ellen for adoption, the judge concluded severing defendant's parental rights would not do more harm than good.

After carefully canvassing the record in light of the arguments posed by defendant in this appeal, we conclude the judge's findings are supported by substantial credible evidence and are entitled to our deference. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998). Accordingly, we affirm substantially for the reasons stated by Judge Paganelli in his comprehensive and well-reasoned written opinion that accompanied the November 15, 2018 order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1498-18T1