# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3664-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.O.,

     Defendant,

and

T.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.O.S.
and A.O.S.,

     Minors.

_____

Submitted January 13, 2020 – Decided January 21, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0053-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert A. Veasey, Deputy Public Defender, of counsel; Anastasia P. Winslow, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Sandra L. Ostwald, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Joseph Hector Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant T.S. (the mother) appeals from an April 10, 2019 order terminating her parental rights to Am.O.S. (Amilia) and Ar.O.S. (Ariel) (the children), twin daughters with special needs born in 2017, and awarding guardianship in favor of the Division of Child Protection and Permanency (the Division).[1] Judge Jane Gallina-Mecca presided over the trial, entered the judgment, and rendered a seventy-page written opinion.

The mother, who did not attend trial or produce any evidence, raises the following arguments:

---

[1] Pseudonyms are used to protect the children's privacy. R. 1:38-3(d)(12).

POINT [I]

THIS COURT SHOULD EXERCISE DE NOVO REVIEW TO RULE THE [JUDGE] ERRED IN CONCLUDING THAT [THE DIVISION] PROVED ALL FOUR PRONGS OF N.J.S.A. 30:4C-15.1(A) BY CLEAR AND CONVINCING EVIDENCE AS THE [JUDGE] RELIED PRIMARILY UPON A PAPER RECORD.

POINT [II]

THE [JUDGE] ERRED IN RULING THAT [THE DIVISION] PROVED PRONG ONE OF N.J.S.A. 30:4C-15.1(A) BY CLEAR AND CONVINCING EVIDENCE AS THERE WAS NOT SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD THAT [THE MOTHER] HARMED HER CHILDREN AND [THE DIVISION'S] EXPERT REPORTS CONFIRMED SHE DID NOT POSE AN IMMINENT RISK OF HARM TO THEM.

POINT [III]

THE [JUDGE] ERRED IN RULING THAT [THE DIVISION] PROVED, BY CLEAR AND CONVINCING EVIDENCE, THAT [THE MOTHER] IS UNABLE OR UNWILLING TO ELIMINATE ANY HARM FACING THE CHILDREN OR UNABLE TO PROVIDE A SAFE AND STABLE HOME FOR THE CHILDREN UNDER PRONG TWO OF N.J.S.A. 30:4C-15.1(A) AS [THE DIVISION] EXPERT REPORTS ALL STATED [THE MOTHER] COULD PARENT THE CHILDREN.

POINT [IV]

THE [JUDGE] ERRED IN RULING THAT [THE DIVISION] PROVED PRONG THREE OF N.J.S.A.

A-3664-18T2

30:4C-15.1(A) BY CLEAR AND CONVINCING EVIDENCE BECAUSE [THE DIVISION'S] EFFORTS IN PROVIDING SERVICES TO [THE MOTHER] WERE SHOCKINGLY DEFICIENT.

A. The record reflects that [the Division] did not heed expert recommendations for services, ignored [the mother's] pleas for help, erected obstacles to [the mother's] reunification, and repeatedly took the position that [the mother's] adolescent case was closed while it violated its own policies as to adolescent case closure and provision of services for homeless youth.

B. The [judge] further erred in ruling there were no alternatives to termination.

POINT [V]

THE [JUDGE] ERRED IN RULING THAT [THE DIVISION] PROVED PRONG FOUR OF N.J.S.A. 30:4C-15.1(A) BY CLEAR AND CONVINCING EVIDENCE AS THE [JUDGE] LOOKED ONLY TO THE QUANTITY OF TIME [THE MOTHER] SPENT WITH THE [CHILDREN] DURING HER PERIOD OF HOMELESSNESS RATHER THAN LOOKING TO THE COMPLETE RECORD AND THE QUALITY OF HER BOND.

We disagree and affirm.[2]

---

[2] We have also reviewed and considered the mother's reply brief dated December 2, 2019.

We begin our discussion with the well-settled legal framework regarding the termination of parental rights. Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test to determine when it is in the child's best interest to terminate parental rights. To secure parental termination, N.J.S.A. 30:4C-15.1(a) requires the Division to prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause

5

serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11. The four prongs of the test are not "discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [judge's] function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81,

87 (App. Div. 2006). The factual findings that support such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." R.L., 388 N.J. Super. at 89.

## II.

We now turn to the mother's argument that the judge erred in finding that the Division proved each of the four prongs under the best interests test by clear and convincing evidence. We disagree with her contentions, and as to the four prongs, we affirm substantially for the reasons given by the judge. We add the following.

## A.

The first prong requires the Division to prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "Although a particularly egregious single harm can trigger the standard, the focus is on the effect of harms

7

arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348. "[T]he attention and concern of a caring family is 'the most precious of all resources.'" In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999) (quoting A.W., 103 N.J. at 613). "[W]ithdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid.

The judge found that the children's health and development were endangered by the mother's "substance abuse, untreated mental health issues, and instability." After the children were born prematurely, the mother led a transient lifestyle, moving from shelter to shelter, and as the judge noted, "[h]er untreated mental health issues caused her to disrupt her housing situation[,] moving the medically challenged infants from place to place." The judge found that she further harmed the children by not maintaining consistent visitation with them since their removal, thereby depriving them of a parent-child relationship.

B.

The second prong of the best interests test requires the Division to present clear and convincing evidence that "[t]he parent is . . . unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The relevant

inquiries for the judge are whether the parent cured and overcame the initial harm that endangered the child, and whether the parent is able to continue the parental relationship without recurrent harm to the child. K.H.O., 161 N.J. at 348-49. To satisfy its burden, the Division must show continued harm to the child because the parent is unable or unwilling to remove or overcome the harm. N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012). The first and second prongs are related, and often, "evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379.

"Parental unfitness may also be demonstrated if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)). "Keeping [a] child in limbo, hoping for some long term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

As to prong two, the judge found that the mother is unable to achieve sustained compliance with services, complete substance abuse treatment, and maintain stable housing. The judge found that the mother is incapable of safely

parenting the children due to her lack of stable housing and her failure to address her mental health and substance abuse issues.

C.

As to prong three, N.J.S.A. 30:4C-15.1(a)(3) requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,]" and the court to "consider[] alternatives to termination of parental rights[.]"  The judge found that the Division provided defendants with a plethora of services, which we need not repeat here.

The judge found the Division consistently and repeatedly made referrals and offered services to assist the mother, who was herself previously in the Division's care as a minor.  After she turned eighteen, the Division continued to provide services, while the mother was still pregnant.  It arranged for psychological evaluations, homemaker services, psychiatric evaluations, domestic violence treatment, housing at Rainbow House (where she was discharged for failure to cooperate with the program), substance abuse treatment, and transportation for visitation, among other services.  The judge also found there were no alternatives to termination of parental rights.  The

10

Division explored family members in and out of New Jersey who were ruled out as possible placement options.

D.

The fourth prong of the best interests test requires a determination that the termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The judge must ask whether "after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O, 161 N.J. at 355. This prong "cannot require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. "The overriding consideration under this prong remains the child's need for permanency and stability." L.J.D., 428 N.J. Super. at 491-92. "Ultimately, a child has a right to live in a stable, nurturing environment and to have the psychological security that [her] most deeply formed attachments will not be shattered." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 453 (2012). "A child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).

A-3664-18T2

As to the fourth prong, the judge concluded that the uncontroverted evidence demonstrated that termination of parental rights would not do more harm than good. The judge determined that the children needed permanency, which can be achieved with the resource parents. Relying on expert testimony, the judge found that the resource parents are the children's central parental love and identification figures. The children perceive the resource parents as their psychological parents, and they can meet the children's special needs—for example, one of the children suffers from torticollis and requires physical and occupational therapy and developmental intervention, and receives treatment by an orthopedist, craniologist, gastroenterologist, and physiatrist. The judge found the resource parents meet the physical and emotional needs of the children, and they provide the children the love and nurture that they need to flourish.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION