# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2225-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.S., JR.,

     Defendant-Appellant,

and

C.M.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.A.S.
and D.L.S.,

     Minors.

_____

Submitted January 14, 2020 – Decided January 22, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FG-12-0077-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Steven Edward Miklosey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Alexander J. Cronin, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

Defendant D.S., Jr., appeals a judgment terminating his parental rights to two children: D.A.S. (born in February 2016) and D.L.S. (born in August 2017). The trial judge rendered that judgment as to both defendant and C.M., the children's mother, who has not appealed, following a three-day trial. Defendant did not testify and he called no witnesses.

In examining such a judgment, we start with the established principle that parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and

2

to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' [that are] 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347. The constitutional right to the parental relationship, however, is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992).

To effectuate these concerns, the Legislature created a test for determining when a parent's rights may be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division of Child Protection and Permanency prove by clear and convincing evidence that the following four prongs favor termination:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to

provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

Defendant's appeal is directed only at the judge's findings on the second, third, and fourth statutory prongs. He argues, in three points, that the judge erred in finding:

> I. [DEFENDANT] WAS UNWILLING OR UNABLE TO ELIMINATE THE HARM FACING HIS CHILDREN, WHERE HE PARTICIPATED IN MULTIPLE EVALUATIONS, COMPLETED SUBSTANCE ABUSE EVALUATIONS AND TREATMENT, AND MAINTAINED GAINFUL EMPLOYMENT.
>
> II. [THE DIVISION] PROVIDED REFERRALS FOR APPROPRIATE SERVICES THAT DIRECTLY ADDRESSED ALL OF [DEFENDANT'S] ISSUES, WHERE [THE DIVISION] FAILED TO MAKE A SINGLE REFERRAL FOR MENTAL HEALTH SERVICES.
>
> III. THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD, WHERE THE TRIAL COURT GAVE INADEQUATE

4

CONSIDERATION TO [DEFENDANT'S] POSITIVE
VISITATION AND BONDING WITH HIS SONS.

Judge Bruce J. Kaplan assessed the evidence and determined that the Division provided clear and convincing evidence on the first prong. He found that both parents "have unabated substance abuse issues, both lack appropriate housing," and that defendant, "while perhaps willing at times, was incapable of consistent appropriate long-term parenting." The judge rejected defendant's argument that he did not harm the children – which defendant based on the fact that they had never been in his custody – because defendant's "actions have contributed to the children's prolonged stay in resource care, and . . . his incapacity to provide adequate care and his inconsistent role in their lives is, in and of itself, causing harm to the children by delaying permanency." Defendant does not challenge the judge's first prong findings.

As to the second prong, Judge Kaplan found it evident that the parents were incapable of "ceas[ing] to inflict harm" on the children. He observed, among other things, that "three years after [the older child's] removal . . . the same circumstances exist as were present when this case began," and that neither parent "has made genuine efforts to remedy the circumstances that caused" the children's removal. Neither parent, the judge found, had acquired appropriate housing, and defendant "has not consistently refrained from illicit drug use and,

as evidenced by his recent drug screens, has relapsed." These and the judge's other findings on the second prong are based on credible and substantial evidence and require our deference. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998).

As for the third prong, defendant argues that the Division failed to make reasonable efforts to provide services to facilitate reunification because it did not recommend mental health services. The judge recognized that the Division "had concerns about [defendant's] mental status and referred him to at least three psychologists for . . . evaluations," but the judge also determined, in finding the Division's experts credible, that:

> None of these experts identified [defendant] as having mental health issues that could be addressed with mental health care or medication. Specifically, Dr. Wells found that [defendant] displays indicia of a mixed personality disorder and that there are no types of psychiatric treatment or medication that can treat personality disorders. Dr. Katz found that [defendant] presented with problems in thought processing but indicated that [defendant] had no further symptomatology to suggest additional mental health issues that would warrant treatment with medication. In fact, [defendant] has denied to multiple evaluators that he has any symptoms or concerns about his mental health. Both Dr. Wells and Dr. Katz indicated that parenting classes would have been sufficient to address [defendant's] parenting deficiencies, if he had properly engaged in them and been willing to make the changes that were recommended. Further, . . . the Division did

6

in fact refer [defendant] to a dual treatment program at Rutgers UBHC, which provided services relating to both substance abuse and mental health[,] [but defendant] never made an intake appointment with UBHC.

These findings, and the judge's other findings on the third prong, are entitled to our deference. F.M., 211 N.J. at 448-49.

As for the fourth prong, Judge Kaplan found the children "established a stable and secure bond with their resource parents, who wish[] to adopt them, and the severance of those bonds would cause severe harm." On the other hand, the judge credited Dr. Katz's view of defendant's relationship with the children as a "trauma bond": "the children recognize [defendant] as 'daddy,' [but] his inconsistency in his visits and his demeanor during [visitation] has caused stress for the children." In assessing these circumstances and the overall body of credible evidence, the judge concluded that termination would not do more harm than good. This is another finding that commands our deference. Ibid.

After close examination of the record in light of defendant's arguments and the judge's findings, we find no merit in defendant's arguments and affirm substantially for the reasons set forth by Judge Kaplan in his comprehensive and well-reasoned ninety-two page written decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-2225-18T2