# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0657-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

N.L.W.,

      Defendant-Appellant,

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
N.M.W., a minor.

_____

Submitted September 13, 2021 – Decided September 22, 2021

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0143-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Deric Wu, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Margo Hirsch, Designated Counsel, on the brief).

PER CURIAM

Defendant N.L.W. (the mother) appeals from an October 15, 2020 order terminating her parental rights to her adopted daughter N.M.W. (the child), born in 2010, and awarding guardianship to the Division of Child Protection and Permanency (the Division). The Division removed the child—due to domestic violence and parental unfitness—when she was seven years old and placed her with the maternal uncle and paramour. Judge Francine I. Axelrad presided over the trial, entered the judgment, and rendered a thoughtful and comprehensive decision.

On appeal, the mother argues:

[POINT I]

[THE DIVISION] DID NOT PROVIDE SUFFICIENT EVIDENCE TO PROVE CLEARLY AND CONVINCINGLY THAT [THE CHILD] WAS HARMED AS A RESULT OF WITNESSING DOMESTIC VIOLENCE.

[POINT II]

[THE DIVISION'S] ENACTMENT OF SUBSTANCE ABUSE SERVICES DID NOT ADDRESS AN ONGOING RISK OF HARM.

We disagree and affirm substantially for the reasons given by the judge in her oral opinion. We add these remarks.

## I.

Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). That right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). The Legislature created a test to determine when it is in the child's best interests to terminate parental rights to effectuate these concerns. To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

3

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;[1]

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11. Although the mother only focused on prongs one and three, the four prongs of the test are "not discrete and separate" but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127,

---

[1] We are aware that on July 2, 2021, the Legislature enacted L. 2021 c. 154, deleting the last sentence of N.J.S.A. 30:4C-15.1(a)(2). This amendment does not impact our judgment because the mother's arguments relate only to the first and third prongs.

139 (1993)).  Adhering to these standards, the judge concluded—relying on the credible evidence that the Division produced—that it was in the child's best interests to terminate the parental rights.

## II.

As we pointed out, the mother focuses on prong one, and to some extent, prong three.  Regarding prong one, the mother argues the Division failed to meet its evidentiary burden.  On prong three, however, the mother does not contend the Division produced insufficient evidence, but rather, the Division offered unnecessary substance abuse services, which did not "provide any proof of risk" to the child.  We disagree with the mother on both arguments.

## A.

The first prong of the best interests test requires the Division demonstrate that the "child's safety, health, or development has been or will continue to be endangered by the parental relationship."  N.J.S.A. 30:4C-15.1(a)(1); see K.H.O., 161 N.J. at 352.  The concern is not only with actual harm to the child but also the risk of harm.  In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999).  The focus is not on a single or isolated event, but rather on the effect "of harms arising from the parent-child relationship over time on the child's health and development."  K.H.O., 161 N.J. at 348.  However, a judge does not

A-0657-20

need to wait "until a child is actually irreparably impaired by parental inattention or neglect" to find child endangerment. D.M.H., 161 N.J. at 383 (citing A.W., 103 N.J. at 616 n.14). The Court has explained that a parent's withdrawal of nurture and care for an extended period is a harm that endangers the health of a child. Id. at 379. When children "languish in foster care" without a permanent home, their parents' "failure to provide a permanent home" may itself constitute harm. Id. at 383.

Here, the judge found that the parental relationship harmed the child by subjecting her to witness domestic violence in the home on multiple occasions, which included aggression by the mother, and that those experiences have had a significant impact on the child. In addition to the harm inflicted on the child by witnessing domestic violence, the judge found the mother harmed her by isolating her from other family members, such as her grandfather. The judge explained that during visits the mother "continued to act erratic, abusive to [the child], to taunt her, to put pressure on her about where she wanted to live, [and] question[ed] her loyalties, continuing to cause harm." The judge found that the mother's failure to visit the child for months "seriously affected" her, and that it was "like [the mother] was [emotionally] torturing her." The judge concluded that the mother's withholding of affection "clearly" harmed the child. The judge

A-0657-20

also stated that the record is replete with examples of the mother's unwillingness to submit to urine samples, including her refusal to be drug tested in court, which led the judge to "absolutely" draw a negative inference about a substance problem. The judge detailed multiple other examples of how the mother harmed the child.

### B.

The third prong requires evidence that "[t]he [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). "Reasonable efforts may include consultation with the parent, developing a plan for reunification, providing services essential to the realization of the reunification plan, informing the family of the child's progress, and facilitating visitation." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 281 (2007) (internal quotation marks and citations omitted). Once again, the mother's argument is not that the Division failed to make reasonable efforts, but that its "enactment of substance abuse services did not address an ongoing risk of harm to [the child]." In other words, that substance abuse services purportedly exceeded the mother's needs.

7

The mother tested positive for methamphetamines at the outset of the litigation. The Division scheduled substance abuse evaluations and expected the mother to follow any recommendations. The initial evaluation recommended outpatient treatment. The record demonstrates support for the scheduled substance abuse services: close relatives and her long-time boyfriend believed she abused drugs; police were involved because she was hallucinating; she stopped communicating with the Division due to illnesses; and during visitation, she repeatedly vomited and was too lethargic to engage with the child. The judge ordered updated substance evaluations—especially because the assessment from Genesis was incomplete. Although the judge gave that order, the mother did not comply.[2]

## C.

Our review of a family judge's factual findings is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate

---

[2] In addition to failing to participate with substance abuse services, the mother was unwilling to submit to individual therapy and complete services related to domestic violence. Also, her therapeutic visitation with the child was terminated after she refused to meaningfully engage in the therapeutic component and repeatedly missed visitation.

parental rights." <u>N.J. Div. of Youth and Family Servs. v. F.M.</u>, 211 N.J. 420, 448-49 (2012). "We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." <u>Id.</u> at 427. Although our scope of review is expanded when the focus is on "'the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' . . . even in those circumstances we will accord deference unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" <u>M.M.</u>, 189 N.J. at 279 (first quoting <u>In re Guardianship of J.T.</u>, 269 N.J. Super. 172, 188-89 (App. Div. 1993); then quoting <u>Snyder Realty, Inc. v. BMW of N. Am., Inc.</u>, 233 N.J. Super. 65, 69 (App. Div. 1989)).

Here, the record contains substantial and credible evidence to support the decision to terminate parental rights. The judge found the mother's testimony was "rambling, incoherent, often non sequiturs, unfocused, nonresponsive, [and] extremely inconsistent." The judge concluded that the mother was at times "making it up as she was going along." And she found other parts of the mother's testimony "incredulous and preposterous." We have no reason to second guess those—or any other—findings.

A-0657-20

To the extent we have not addressed any other argument, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0657-20