# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1833-20
                A-1834-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

A.C. and L.M.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.M.,
a minor.

_____

Submitted November 3, 2021 – Decided January 20, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0037-20.

Joseph E. Krakora, Public Defender, attorney for appellant A.C. (Stephania Saienni-Albert, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant L.M. (Kathleen Gallagher, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendants, A.C. (April) and L.M. (Len), appeal from a Family Part guardianship judgment terminating their parental rights to their biological child, J.M. (John). They contend on appeal that the Division of Child Protection and Permanency failed to prove by clear and convincing evidence that the best interests of John would be served by terminating April and Len's parental rights under N.J.S.A. 30:4C-15.1(a). We are persuaded that the trial court correctly found that the Division met its burden with respect to each parent, freeing John for adoption. We affirm substantially for the reasons set forth by Judge Linda L. Cavanaugh in her thorough written opinion.

2

## I.

John was born to April and Len on April 29, 2012. April has an older child, Albert, born in 2006, by another biological father. Albert is in the custody of his biological father and is not a party to this litigation. The record shows that in 2008, prior to John's birth, April was the subject of two referrals to the Division. The referrals alleged that April was abusing substances while she had Albert in her care and was leaving Albert alone without supervision.

On August 13, 2015, the Division received a referral alleging that April and Len were using illicit substances and were leaving John unsupervised. The police were called to April and Len's home multiple times between June 2016 and August 2016. The allegations included that Len had: taken April's car; taken money from her; and physically assaulted her.

In August 2016 the Division received more referrals regarding April and Len. The multiple allegations included: the parents' continuing substance abuse; their failure to take care of John; April's alleged engagement in prostitution; the parents' leaving John unsupervised on at least one occasion, resulting in him walking down the street alone; Len's violation of a temporary

A-1833-20

restraining order barring him from contact with April; and Len's aggravated assault on a law enforcement officer and resisting arrest charges.

The Division conducted a follow-up investigation and determined that the allegations of neglect were not established. Nevertheless, it offered services and provided treatment referrals to the parents. April and Len received substance abuse assessments, Len received domestic violence counseling, a home health aide was assigned to their home, and John was enrolled in day care. Unfortunately, in March 2017 the Division received another referral alleging, among other things, that the parents were using the drug PCP in John's presence, and that April had threatened to commit suicide. The Division again found that the allegations of abuse and neglect were not established.

The situation continued to devolve and by June 2017, Len had been incarcerated and April was stopped for driving under the influence with John and another child in the car. Additionally, Albert accused Len of showing sexually inappropriate photos to him and to John. After an investigation, the Division substantiated allegations of abuse and neglect stemming from this incident. The trial court granted the Division's application for custody on June 29, 2017, placed John with his maternal grandmother, and left Albert with his biological father.

4

April continued to use illegal substances and was non-compliant with her treatment regimen starting in November 2017. She was eventually discharged from treatment. Her counselors reported that she "did not accept any responsibility" for her son being in the Division's custody.

John was then evaluated and treated for his exposure to his parents' domestic violence, drug use, and neglect, as well as his exposure to sexually explicit material. By April 2018, John had successfully participated in reunification visits with his parents, and the Division's plan for him was reunification. April and Len were both successfully participating in parental services, including outpatient substance abuse, crisis intervention, and family education services.

Tragically, John's maternal grandmother, his resource parent, attempted suicide. As a result, the Division elected to accelerate John's reunification with April. They returned John to her custody with the condition that she comply with services. Len was granted unsupervised visitation so long as he complied with services. Unfortunately, soon after reunification, both parents dropped out of the parenting programs in which they had enrolled.

By July 2018, the Division had received more allegations of drug use and failure to supervise John. The Division continued to monitor the family,

A-1833-20

however their negative incidents mounted. April contacted police and made domestic violence allegations against Len, resulting in his arrest, and the Division received yet another allegation of April's drug use while caring for John. John was placed in the care of his paternal grandmother at that time as April was taken to the hospital for examination.

The Division maintained care and supervision of John by keeping him with his paternal grandmother. Shortly thereafter, April was referred to the Division again, this time by Albert's father, after she arrived at his home to pick up Albert and John while she was visibly under the influence. When the Division responded to the home, they observed that John was crying and did not want to leave.

At this point, the Division successfully applied for custody of John, and he was placed with a non-relative resource parent. A permanency hearing was conducted on August 6, 2019, and another Family Part judge accepted the Division's adoption plan for John. The Division filed a guardianship complaint and order to show cause on September 17, 2019. The guardianship trial took place on December 10-11, 2020.

The Division introduced over 50 exhibits and presented testimony from three witnesses, a Division caseworker, Taniesha Campbell, and two expert

witnesses, Dr. Mark Singer, an expert in parental assessments, as well as psychological and bonding evaluations, and Dr. Sonia Oquendo, an expert in child psychiatry. Neither parent, nor John's guardian called any witnesses or offered any evidence at trial. The trial court found the Division's witnesses credible.

The trial court made findings, terminating the parental rights of April and Len on February 18, 2021. Both parents appealed. April argues that the Division failed to meet its burden by clear and convincing evidence on all four prongs of N.J.S.A. 30:4C-15.1(a). Len argues that the Division failed to meet its burden by clear and convincing evidence with respect to prongs three and four.

II.

The legal framework regarding the termination of parental rights is well-settled. Parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from

harm. N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when parental rights must be terminated in a child's best interests.

In order to obtain parental termination, N.J.S.A. 30:4C-15.1(a) requires the Division prove by clear and convincing evidence that: (1) the child's safety, health, or development has been or will continue to be endangered by the parental relationship; (2) the parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm; (3) the Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and (4) termination of parental rights will not do more harm than good. N.J.S.A. 30:4C-15.1(a). See also A.W., 103 N.J. at 604-11.

The four prongs of the test are not "discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require

8

particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Child. by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [trial] court's function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006).

We accord deference to fact-findings of the Family Part "because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth and Fam. Servs v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare, 154 N.J. at 413). "We recognize that the cold record, which we review, can never adequately convey the actual happenings in a courtroom." Ibid. (citing N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We will not overturn a family court's fact-findings unless they are so "'wide of the mark'" that our intervention is necessary to correct an injustice. Ibid. (quoting

N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). It is not our place to second-guess or substitute our judgment for that of the Family Part, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights. Id. at 448-49.

III.

We address April and Len's arguments together. Collectively they argue that the trial court erred by finding that the Division proved by clear and convincing evidence each prong of N.J.S.A. 30:4C-15.1(a) with regard to each parent.[1] We disagree, and we affirm substantially for the reasons expressed by the trial court. We add the following observations.

Prong one requires the Division to prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "Although a particularly egregious single harm can trigger the standard, the focus is on the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348. "[T]he attention and concern of a caring family is 'the most precious of all resources.'" In re Guardianship of D.M.H.,

---

[1] We note that Len does not allege any trial court error with respect to prongs one and two of N.J.S.A. 30:4C-15.1(a).

161 N.J. 365, 379 (1999) (quoting A.W., 103 N.J. at 613). "[W]ithdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid.

The trial court found the evidence of harm resulting from John's relationship with his parents was "clear and unambiguous." It recited a litany of actions by both parents that had and would continue to jeopardize John's health and development. The court noted that April and Len's referrals to the Division were constant and repetitive, and the resultant investigations revealed allegations of substance abuse, domestic violence, and lack of supervision. Moreover, April's driving under the influence with John and another child in the car and her attempt to drive John home while intoxicated – which led to the Division's second and final removal – was a clear threat to the child's safety and wellbeing.

Expert testimony from Dr. Singer and Dr. Oquendo revealed John's post-traumatic stress disorder diagnosis. According to the experts, the diagnosis was based in part on John's exposure to the domestic violence between April and Len, to his maternal grandmother's suicide attempt, and to his exposure, as a toddler, to adult-themed movies, including horror movies. John suffers from nightmares, and the experts' prognosis for him is guarded. Dr. Oquendo

concluded that the many traumatic events in John's young life have placed him permanently at "risk for a major psychiatric disorder," even with treatment. The trial court's finding that the Division clearly and convincingly proved that the parents' conduct caused John harm, and that they posed a continuing threat of harm, was amply supported by the credible evidence in the record.

The second prong of the best interests test requires the Division to present clear and convincing evidence that "[t]he parent is . . . unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The judge must consider whether the parent cured and overcame the initial harm that endangered the child and whether the parent is able to continue the parental relationship without recurrent harm to the child. K.H.O., 161 N.J. at 348-49. To satisfy its burden, the Division must show the child faces continued harm because the parent is unable or unwilling to remove or overcome the harm. N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012).

"Parental unfitness may also be demonstrated if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)). "Keeping [a] child in limbo, hoping for

12

some long[-]term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

The record is replete with April's unwillingness or inability to maintain a healthy relationship with John and foster an environment leading to his normal development. While Len did not challenge this finding on appeal, we agree with the trial court's finding that "neither [April] nor [Len] is able or willing to provide a consistent, safe, and stable home for [John] now or in the foreseeable future."

The trial court noted that there was not one, but two child protective services cases opened against the parents, and that they had "ample time and opportunity to take advantage of the [parenting] services offered and attempt to remediate the issues that were the cause of removal of their child." The trial court did not find April to be a credible witness because the denial of her substance abuse issues and domestic violence history was inconsistent with the voluminous records to the contrary including: treatment records, evaluations and assessments, drug screening, and police records of calls and complaints.

Finally, the court found that a chorus of experts concluded that April simply refused to take responsibility for her actions, that she "minimize[d] her

13

personal faults," and that she blamed others, including the Division and Albert's father, for John's removal.

The trial court found credible expert testimony from Dr. Singer that John has formed a strong bond with his paternal grandmother, who is a "source of emotional and physical stability." The court concluded, based on the record, that such a bond was non-existent between John and his biological parents. The trial court's finding that April "is . . . unable or unwilling to provide a safe and stable home for the child," is supported by the overwhelming evidence in the record, only a fraction of which is recounted here. The record further supports the conclusion that "the delay of permanent placement will add to [John's] harm."

As to prong three, N.J.S.A. 30:4C-15.1(a)(3) requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and the judge to "consider[] alternatives to termination of parental rights."

The record shows the Division provided April and Len with a full range of services. A partial summary of services provided to the parents includes: multiple substance abuse assessments and treatment referrals; domestic violence counseling, including batterer's intervention; provision of a home health aide;

day-care for John; psychological and psychiatric evaluations and corresponding treatment and services for parents and child; bonding evaluations; transportation assistance; rental assistance; trauma focused therapy and pre-adoption services.

After the second removal, April and Len simply were unable to successfully complete the course of evaluations and corresponding services required to better equip themselves to care for their child. Because Len challenges the trial court's findings as to prong three, we note that he did not complete even one of the plethora of services offered to him. We note that record shows that Len was incarcerated for much of the period of the guardianship litigation. The trial judge found that his numerous incarcerations "complicated" his efforts to successfully participate in his therapy. The trial court found Len's "numerous arrests," "violations of probation," positive drug tests while on probation, and failures to report to probation all contributed to Len's failure to comply with parenting services.

The trial court did not find active participation by the parents in the services offered by the Division, concluding that participation was "sporadic" at best. The record shows the trial court reviewed the alternatives to termination and concluded that there was no feasible alternative available. We find the

record amply supports the trial court's finding that the Division met its burden on prong three as to April and Len, and we see no reason to disturb it.

The fourth prong of the best interests test requires a determination that the termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The judge must ask whether, "after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O, 161 N.J. at 355. "The overriding consideration under this prong remains the child's need for permanency and stability." L.J.D., 428 N.J. Super. at 491-92. "Ultimately, a child has a right to live in a stable, nurturing environment and to have the psychological security that [her] most deeply formed attachments will not be shattered." F.M., 211 N.J. at 453. "A child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).

The trial judge referred to the testimony of Doctors Singer and Oquendo to inform her findings on prong four. The court noted that Dr. Singer spent over a year evaluating April, Len, and John, as well as John's paternal grandmother.

16

Dr. Singer testified that, in his opinion, the parents could not "mitigate the tremendous loss [John] would experience if his relationship with his grandmother was severed." Dr. Singer opined that April and Len's deep-seated problems persisted, including "failed reunifications, [the] history of domestic violence and minimization of [domestic violence], . . . the denial that alcohol abuse is an issue for [April] and substance abuse is an issue for [Len], co-dependency issues, and minimization of personal responsibility, [as well as] poor decision-making." The trial court found that April and Len have made no progress and that "the situation has only worsened." Dr. Oquendo's testimony regarding April and Len's non-responsiveness during her evaluations confirmed that neither April nor Len is prepared to be a consistent, responsible parent to their child.

In contrast, the court concluded that the paternal grandmother "is a caring, concerned resource parent who has provided love and affection to [John], and [has and will continue to provide] . . . a safe and stable home." The record shows that the Division met its burden on prong four as to both parents. Any arguments not addressed here lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1833-20